586 P.2d 717

The FARMERS AND STOCKMENS BANK OF CLAYTON, a New Mexico banking Corporation, and Commerce Agricultural Loan Company, a New Mexico Corporation, Plaintiffs-Appellees,

v.

Albert W. LAYTON, also known as A. W. Layton, Lucille Layton, the United States of America, Boise City Farmers Cooperative, Harold Butler Enterprises, Inc., Colfax Mills, Inc., and Farmers Supply Company, a corporation, Defendants-Appellants.

No. 3186.

Court of Appeals of New Mexico.

Oct. 24, 1978.

Emmett C. Hart, Albuquerque, James K. Ribe, Tesuque, for defendants-appellants.

Alvin F. Jones, Roswell, for plaintiffs-appellees.

OPINION

SUTIN, Judge.

On April 14, 1965, Layton executed a note and mortgage on his land to Commerce Agricultural Loan Company (Commerce) showing an indebtedness of $113,384.55. On December 31, 1970, Layton executed a promissory note to Commerce in the sum of $36,372.22 with interest at the rate of 10 percent per annum. This 1970 note is the subject of this litigation. It was due and payable on December 31, 1971. Interest was paid on May 1, 1971 and July 12, 1971, but no further payments were made and the note lay dormant until July 31, 1973 when *Commerce assigned the note and mortgage to Farmers and Stockmens Bank* (Bank). Layton was also indebted to the Bank secured by a mortgage on his land.

Commerce and the Bank filed suit against Layton on June 18, 1976, Commerce to seek judgment on the note, and the Bank to foreclose on its mortgage. The trial court awarded Commerce judgment against Layton in the sum of $56,013.83 plus 10 percent interest. The court found that, *as evidenced by the intention of the parties, Commerce assigned the mortgage but did not assign the note*; that the note was placed by Commerce in its "Reserve for losses ledger" and that Commerce was the

owner and holder of the note which was due and owing. Layton appeals, we reverse.

The record, the testimony of the parties, the various transactions between the parties have been carefully reviewed, and there is no evidence that Commerce assigned to the Bank the mortgage but not the note. Both instruments were actually assigned unconditionally.

*First*, the evidence is uncontradicted that Commerce unequivocally assigned the 1970 note to the Bank; that Commerce was not the holder of the note at the time suit was instigated and therefore was not the real party in interest pursuant to Rule 17(a) of the Rules of Civil Procedure [§ 21–1–1(17)(a), N.M.S.A.1953 (Repl.Vol. 4)]. It had no right to prosecute this claim on the promissory note.

*Second*, Layton contends that parol testimony cannot be admitted to vary or contradict the terms of the Assignment. Commerce argues that Layton was a stranger to the Assignment and Layton cannot invoke the Parol Evidence Rule. Neither contention is relevant because *there was no parol testimony that varied or contradicted the terms of the Assignment.*

The Bank and Commerce were owned and controlled by the Chilcote family and, at the time of the assignment, John Chilcote was vice-president of Commerce, and, at the time of filing suit, he was president. W. H. Cantrell was vice-president and loan officer of both the Bank and Commerce.

On July 31, 1973, Chilcote executed the following assignment for Commerce:

COMMERCE . . . hereby assigns and transfers such mortgage *and the obligations secured thereby to The . . . BANK* . . .. [Emphasis added.]

It is undisputed that the 1970 note was one of the obligations secured.

The day following the assignment to the Bank, August 1, 1973, Cantrell as vice-president of the Bank, and Layton executed a Mortgage Extension Agreement. "WHEREAS" clauses recited that on April 14, 1965, Layton executed a note to Commerce in the amount of $113,384.55 together with a mortgage; that on July 12, 1971, Commerce extended the time of payment; that $96,640.00 remained unpaid. The following "Whereas" clause states:

WHEREAS, Commerce . . . has assigned and transferred all of its right, title and interest in such mortgage *and the obligations secured thereby to The . . . Bank . . . which is the present holder and owner of said obligations* and the securing lien evidenced by the above described mortgage . . . .

The parties agreed that the maturity date for payment of the $96,640.00 obligation acquired from Commerce would be extended to January 15, 1974.

The indebtedness of $96,640.00 represented $60,000.00 *paid by the Bank to Commerce.* The balance of $36,640.00 was the balance due on Layton's 1970 note. The Commerce ledger sheet, as of August 1, 1973, shows the Layton account *paid in full.* The Bank, in fact, extended the payment of the 1970 note from August 1, 1973 to January 15, 1974, and no payments were made or collected thereafter. Commerce claimed that the 1970 note was a "charge off." Mr. Cantrell testified that, although the Mortgage Extension Agreement covered the 1970 note and the Bank extended payment of the note, *the note would not be incorporated in Layton's existing loan with the Bank until Layton secured additional financing;* it was not disclosed in the instrument "that it was agreed that the charge off, of course, from the loan would be taken care of." A "charge-off" note is one no longer considered an asset.

Mr. Chilcote testified *that the Layton loan was transferred to the Bank because the note,* not discountable, *could not be kept by Commerce*; that Layton was unable to pay the note, and *Commerce would have to pay the Bank for the note. There was no evidence that Commerce paid the Bank to obtain a return of the note.* Chilcote did tell Layton that Commerce would keep the

loan; that Layton said nothing and did not protest and object that he did not owe the amount of the note. It is upon this testimony alone that Commerce claims:

> The testimony of the representatives of the loan company and the bank was unequivocal that the obligations transferred by the assignment . . . did not include the charged off note . . . which continued to be the property of the loan company and was such at the time of trial.

This claim is frivolous.

Commerce had no right, title or interest in the note at the time suit was filed; yet Commerce now claims that the note was a "charge-off," and for reasons unknown, now claims that it had ownership and possession of the note. The record does not show any dealings between these family corporations in which the note was reassigned to Commerce.

It is noted with much interest that Chilcote did not refer to additional financing by Layton as a condition attached to the assignment of the note. Based upon this testimony alone, the Commerce assignment of the note to the Bank was clear, unambiguous and unconditional with sufficient consideration therefor. The extension agreement confirmed that all of Layton's obligations to Commerce were transferred to the Bank. It was Cantrell only, speaking for the Bank, who testified, despite the assignment and transfer, that the Bank would not incorporate the note in Layton's existing loans with the Bank until Layton secured additional financing. This fact did not constitute a nonacceptance of the assignment. To make such a claim would be frivolous because the assignment was accepted by the Bank in the execution of the Mortgage Extension Agreement and the Bank, in fact, extended the time for payment of the note.

The struggle between the parties in the trial court and on this appeal centers around the application of "The Parol Evidence Rule."

The "Parol Evidence Rule" is applicable when the terms of a written instrument are plainly stated, without ambiguity, and a party seeks to contradict or vary its terms by the use of parol testimony. It is a fundamental principle of law that the use of such parol testimony is prohibited. *Armijo v. Foundation Reserve Insurance Company*, 75 N.M. 592, 408 P.2d 750 (1965).

This rule is inapplicable because none of the parol evidence shown above varied the terms of the assignment.

We are faced with two family corporations dealing separatively with the same debtor, dealing privately between themselves, intermingling the debtor's various loans, and entering into assignments and agreements, separately. For some undisclosed reason, both sue the debtor in the same action, Commerce to collect on a note already assigned to the Bank, and the Bank foreclosing a mortgage. With a common vice-president and loan officer, acting on behalf of both corporations, knowledgeable of Layton's relationship with both corporations, with a vice-president raised to the office of president of Commerce, with some official relationship with the Bank, knowledgeable of Layton's relationship with both corporations, the Assignment and the Mortgage Extension Agreement are read together as one instrument entered into between both corporations and Layton. The corporations or their officers are not charged with any willful or fraudulent conduct. They were mistaken in the procedures used to collect the principal and interest on the 1970 note.

Commerce also argues that the 1970 note was not paid by Layton and Layton should be required to pay the note. If this note was payable, it was payable to the Bank and not to Commerce. Commerce and the Bank do not have the right to collect twice on this note. A serious question of fact exists whether the "charged-off" 1970 note was paid by judgment entered for the Bank on the foreclosure of its notes and mortgag-

es. This question does not arise on this appeal.

What cannot be understood is why Commerce, instead of the Bank, stepped in to try and collect the 1970 Layton note. If the Bank had sued, the issue would have been resolved. Inasmuch as Commerce had no right, title or interest in the note, it does not have the power to sue and collect.

Reversed. The trial court shall vacate its judgment rendered in favor of Commerce and against Layton, and enter judgment for Layton, together with costs expended and interest thereon. Layton shall recover its costs on this appeal.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., concurring in result only.