692 P.2d 1315

CLOVIS NATIONAL BANK,
Plaintiff-Appellant,

v.

Don HARMON a/k/a Dickie Don Harmon and Whiteway Cattle Co., Inc., a corporation, and Ken White, Ken White, Jr., Joe W. White and Gloria White, individually, the Administrator of the Small Business Administration, an agency of the United States Government and Barney J. Bocock and Lavena M. Bocock, his wife, Defendants-Appellees.

No. 14794.

Supreme Court of New Mexico.

Dec. 4, 1984.

Rehearing Denied Jan. 3, 1985.

Richard F. Rowley, II, Rowley Law Office, Clovis, for plaintiff-appellant.

Richard M. Snell, Clovis, for defendants-appellees.

## OPINION

RIORDAN, Justice.

Plaintiff Clovis National Bank (CNB) brought suit against Don Harmon (Harmon); Whiteway Cattle Co. (Whiteway); Ken White, Ken White, Jr., Joe W. White, and Gloria White (Whites); the administrator of the Small Business Administration (SBA); and Barney J. Bocock and Laverna M. Bocock (Bococks). Whiteway, the Whites, and the SBA filed cross-claims against Harmon. After a non-jury trial, the district court entered judgment in favor of CNB on its complaint, in favor of the SBA on its cross-claim, and in favor of Whiteway and the Whites on their cross-

claim. CNB appeals, and the Whites cross-appeal. We affirm in part, reverse in part, and remand to the district court.

The issue we address on appeal is:

I. Whether there was substantial evidence to support the district court's finding that the note Ken White endorsed on behalf of Whiteway should be paid proratably out of the proceeds from the foreclosure sale.

The issues on cross-appeal are:

II. Whether the district court erred in refusing to allow the Whites to participate in the sale of personalty listed in a security agreement Harmon gave to CNB.

III. Whether the district court erred in allowing CNB attorney fees equal to ten percent of the amount of its judgment.

In July 1974, Harmon and his former wife, Shirley Harmon, (Harmons) made, executed, and delivered to CNB a real estate mortgage securing their existing and future indebtedness (1974 real estate mortgage). In December 1974, Harmon executed and delivered to CNB a promissory note which Ken White endorsed on behalf of Whiteway (endorsed note); Harmon renewed the endorsed note several times thereafter. In January 1975, Harmon executed and delivered to CNB another promissory note which he also renewed several times thereafter (1975 note). In January 1976, the Harmons gave CNB another mortgage to secure past, present, and future debts (1976 real estate mortgage) and a security interest in certain personalty (security agreement). In December 1981, Harmon executed and delivered an additional promissory note to CNB (1981 note). In March 1982, CNB paid a bill for repair work done on a well and pump at Harmon's ranch (repair bill). Although CNB has made repeated demands for payment, none of the notes nor the repair bill have been paid.

On April 12, 1982, CNB filed a complaint which set out two counts. Count I was for judgment against Harmon, the SBA, and the Bococks on the 1975 note, the 1981 note, and the repair bill; in Count I, CNB sought payment through the foreclosure of the 1974 and 1976 real estate mortgages and the security agreement. Count II was for judgment against Harmon, Whiteway, and the Whites on the 1974 note; in Count II, CNB also sought payment through the foreclosure of the 1974 and 1976 real estate mortgages and security agreement. Whiteway and the Whites cross-claimed seeking judgment against Harmon for the amount of any judgment entered against them as a result of their endorsement of the 1974 note. The SBA cross-claimed seeking judgment that it has a valid lien against Harmon's property described in its own mortgage. The district court entered judgment in favor of CNB on its complaint and in favor of Whiteway, the Whites, and the SBA on their cross-claims. The district court held that the endorsed note was secured by the 1974 and 1976 real estate mortgages and security agreement, and that the 1974 note would be paid proratably out of the proceeds from the foreclosure of those mortgages. The district court awarded CNB attorney fees equal to ten percent of the amount of its judgment.

## I. Substantial Evidence.

On appeal, CNB argues that there was not substantial evidence for the district court: (1) to hold that the endorsed note should be satisfied proratably from the sale of Harmon's mortgaged property; (2) to find that representations were made to the Whites that the endorsed note was secured by other collateral; (3) to refuse to find that CNB made no representations on which the Whites detrimentally relied; and (4) to refuse to find how the indebtedness was originally incurred.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Toltec International, Inc. v. Village of Ruidoso*, 95 N.M. 82, 84, 619 P.2d 186, 188 (1980). On appeal, we resolve all disputed facts in favor of the successful party, indulge all reasonable inferences in support of a verdict, and disregard all evi-

dence and inferences to the contrary. Furthermore, we do not weigh the evidence, nor do we foreclose a finding of substantial evidence. *Id.*

■ In the present case, the 1974 real estate mortgage states:

> This mortgage secures the performance of the following obligation: .
>
> All indebtedness of mortgagors now existing *or hereafter incurred,* whether individual, joint, several, contingent or as principal, guarantor or surety, evidenced by various promissory notes and instruments of obligation which may be examined at mortgagee's place of business, 233 Main Street, Clovis, New Mexico. (Emphasis added.)

This language makes it clear that the 1974 real estate mortgage secures all of Harmon's debts, including those incurred *after* its execution. The endorsed note is thus secured by the 1974 real estate mortgage since the endorsed note was created in December 1974, five months after the creation of the mortgage.

■ The 1976 real estate mortgage, created *after* the endorsed note states:

> This mortgage secures the performance of the following obligation:
>
> All indebtedness of mortgagors *now existing* or hereafter incurred, whether individual, joint, several, contingent or as principal, guarantor or surety. * * * (Emphasis added.)

This mortgage also clearly expresses the intent that it secure all Harmon's existing or future debts. The endorsed note is thus also secured by the 1976 real estate mortgage since the endorsed note was in existence at the time of the 1976 real estate mortgage was created.

■ If CNB had intended for the real 1974 and 1976 estate mortgages to secure only certain notes or loans, it could have stated that intent in the mortgages. CNB did not do so, however, and we "will not do for a party that which he failed to do for himself." *Shaeffer v. Kelton,* 95 N.M. 182, 186, 619 P.2d 1226, 1230 (1980). Further-

more, if CNB were unable to collect from Whiteway or the Whites for some reason, CNB would undoubtedly claim that the endorsed note was secured by the real estate mortgages.

■ We therefore determine that the district court did not err in finding that the endorsed note should be satisfied proratably from the sale of the Harmons' mortgaged property.

Because we determine that the real estate mortgages clearly express the intent that they would secure the debt incurred by the endorsed note, it is unnecessary for us to discuss the Whites' reliance or nonreliance on representations made or not made by CNB. *See Acquisto v. Joe R. Hahn Enterprises,* 95 N.M. 193, 195, 619 P.2d 1237, 1239 (1980); *Farmers and Stockmens Bank v. Layton,* 92 N.M. 246, 248, 586 P.2d 717, 719 (Ct.App.1978).

## II. Sale of Personalty.

■ On cross-appeal, the Whites argue that the district court erred in refusing to allow them to participate in the sale of the Harmons' personalty. We agree.

The security agreement states:

> 1. The following is the obligation secured by this agreement:
>
> a. All *past,* present, and future advances, of whatever type, by bank to debtor. * * *
>
> b. All *existing* and future liabilities, of whatever type, of debtor to bank. * * * (Emphasis added.)

This language clearly provides that the personalty described in the security agreement secures all *previous* debts. The debt from the endorsed note was created before this security agreement. Therefore, that debt was "past" and "existing" and was clearly covered by the security agreement. *Farmers and Stockmens Bank v. Layton.* We thus determine that the Whites should be allowed to participate in the sale of the personalty listed in the security agreement.

### III. Attorney Fees.

■ The Whites also argue on cross appeal that the district court erred in allowing CNB attorney fees equal to ten percent of the amount of CNB's judgment. The Whites claim that such an award is excessive and not supported by substantial evidence. We agree.

As CNB points out, the endorsed note does state that " 'ten percent' will be added to the amount if the note is unpaid and if placed in the hands of an attorney for collection." Nevertheless, we have determined that mortgage provisions stipulating attorney fees are subject to the court's scrutiny and will be reduced where uncertain or excessive. *Budagher v. Sunnyland Enterprises*, 90 N.M. 365, 563 P.2d 1158 (1977). *See also Robison v. Katz*, 94 N.M. 314, 610 P.2d 201 (Ct.App.), *cert. denied*, 94 N.M. 675, 615 P.2d 992 (1980).

In the present case, the district court found that:

> 22. Ten percent (10%) of the amount owed Plaintiff by virtue of the unpaid principal and interest on the notes [including the endorsed note] is in excess of Forty Thousand Dollars ($40,000.00) and a reasonable attorney fee to be awarded Plaintiff at the time of Entry of Judgment herein.

The district court then concluded that:

> 3. The Plaintiff should be granted judgment for attorney fees against Don Harmon in the amount of ten percent (10%) of the amount [of the judgment].

The district court made no other finding nor in any way indicated why ten percent of the judgment would be reasonable attorney fees. We are thus unable to determine whether the district court abused its discretion in awarding attorney fees. *Robison v. Katz.* This case is therefore remanded to the district court for a hearing on a reasonable amount to be awarded for attorney fees.

IT IS SO ORDERED.

FEDERICI, C.J., and SOSA, Senior Justice, concur.