730 P.2d 1

**Maria PACHECO, aka Maria Quíntana, Petitioner-Appellee, and Cross-Appellant,**

v.

**Eloy QUINTANA, Respondent-Appellant, and Cross-Appellee.**

No. 8181.

Court of Appeals of New Mexico.

Dec. 23, 1985.

Certiorari Quashed Dec. 2, 1986.

Sandra Morgan Little, Atkinson & Kelsey, P.A., Albuquerque, for petitioner-appellee and cross-appellant.

David J. Berardinelli, David J. Berardinelli, P.C., Santa Fe, for respondent-appellant and cross-appellee.

## OPINION

GARCIA, Judge.

Respondent appeals from the trial court's finding that military retirement benefits had not previously been divided, and that petitioner was entitled to her communal share of benefits from the date her Petition to Divide undivided community property was filed. Petitioner cross-appeals from the court's refusal to award retirement benefits prior to the date her petition was filed.

### FACTS

Prior to the parties' marriage, respondent spent four years in the armed services. The parties married in 1959, and in 1962 respondent decided to make the military his career and re-enlisted in the United States Marine Corps. The parties remained married until 1973 when petitioner initiated an action for dissolution of marriage. Petitioner was living in New Mexico and retained her own attorney to prosecute her action. Respondent was stationed in Nam Phon, Thailand, and did not have counsel of record, but did have legal advice and assistance from an attorney assigned to the Judge Advocate General's Office. The parties, with the assistance of their attorneys, negotiated an amicable settlement which was memorialized in an agreement drafted by petitioner's attorney. The agreement was to be submitted to the trial court for approval and incorporated into the final decree of dissolution of marriage.

The property settlement agreement divided items of personal property, including household goods, furnishings and automobiles. The settlement also disposed of real estate. The agreement indicated that it was the parties' intent to fully and completely settle their rights or claims in all respects. The agreement further recited that the parties had fully cooperated in making available information concerning their property and financial affairs and that the agreement had been freely and voluntarily made without undue influence. Each party waived further claims against the other. In particular, the agreement provided in pertinent part:

1. Except as hereinafter specifically set forth, each party is released from any obligations for the future acts of the other party, and each party hereby releases and agrees to indemnify the other party from any obligations of any kind previously incurred by or through the other party, and from any claim of the other party, including claims of either party for support or maintenance as husband and wife or property claims, it being understood that this instrument is intended to settle the rights of the parties hereto in all respects except insofar as any provision herein may be changed by order of the Court.

2. That any and all property acquired by either of the parties hereto from this date henceforth shall be the sole and separate property of the party acquiring the same.

    *      *      *      *      *      *

4. That Plaintiff shall receive in full settlement and satisfaction of her community property the following assets: her separate property and such other miscellaneous property and cooking utensils as is mutually agreed to.

5. The Defendant shall retain the balance of the community property as his sole and separate estate, with the exception of the following items which will be disposed of as follows: [Specific disposition made of the parties' home, furnishings, automobile and other real estate.]

    *      *      *      *      *      *

8. It is understood and agreed that this Property Settlement Agreement constitutes full and complete settlement between the parties hereto; that it has been made freely and voluntarily between the parties without the undue influence of any person whatsoever; that the parties have cooperated fully in making available to each other requested information with respect to the properties and financial affairs of the parties; that the parties understand the terms of this Agreement; that neither of the parties shall assert any further claims against

the other; and that both parties agree that this Property Settlement Agreement shall be submitted to the District Judge who has jurisdiction over this cause for approval by said District Judge.

In accordance with the parties' agreement, the stipulation was approved by the district court and incorporated into the final decree. At the time of divorce, several years of military retirement credits had been earned, but retirement benefits had not matured. Had respondent left the service in 1973, he would not have been entitled to any military retirement benefits.

After the parties' divorce, they remained in contact with one another and continued to have social and business relationships. In 1977 the parties remarried. Respondent was still in the military service. In September of 1978, respondent retired from the military, and one year later, a second action for dissolution of marriage was filed. In this instance, respondent retained counsel and filed his petition to dissolve the matrimonial relationship. The petition recited that there was no community property nor community indebtedness. Petitioner entered her appearance in the divorce action by way of a written general appearance, affidavit, and acceptance of service. She waived further notice of the proceedings. On September 5, 1979, the district court approved a proposed final decree dissolving the parties' second marriage and finding that there was no community property nor community indebtedness.

In the spring of 1981, petitioner heard a news program concerning military retirement benefits and learned that as a former spouse of a serviceman, she may have been entitled to retirement benefits. In June of 1983, petitioner filed the present action to divide "undivided community property." No appeal from the court's prior final decrees had ever been taken, nor had petitioner ever filed a motion seeking relief from judgment or order pursuant to NMSA 1978, Civ.P.Rule 60 (Repl.Pamp.1980). At the hearing on her petition, petitioner did not claim that there was any fraud, misrepresentation, duress or coercion in the nego-

tiation or execution of the 1973 agreement. Nor did petitioner assert any ambiguity or inconsistencies in the agreement and decree. Rather, petitioner claimed that she was entitled to a proportionate share of retirement benefits which had not been discussed nor divided by the 1973 agreement and decree. Following a hearing on petitioner's claim, the trial court found that neither divorce decree had divided respondent's retirement pay. Further, the court determined that it would be unfair to allow petitioner to receive any portion of the retirement pay which had previously been received by respondent from the time of his retirement until the time that she had filed her motion for division of property.

While the parties frame the issues in various manners, the significant questions are whether military retirement benefits were divided in the 1973 settlement agreement, and whether the court properly considered military benefits in the 1979 decree. In determining the first issue, the trial court took evidence concerning the parties' discussion or lack of discussion concerning retirement benefits and the parties' intent concerning the benefits. The court concluded that it was more probable than not that the parties had not considered the retirement benefits during the 1973 proceedings. Further, the court noted that a valuable property right, not in contemplation of the parties, could not be passed by the "catch-all residuary clause," contained in paragraph 5 of the agreement.

■ We first determine whether the court could consider matters outside of the stipulation in construing the document. In *Parks v. Parks*, 91 N.M. 369, 574 P.2d 588 (1978) the court stated:

The stipulation involved herein and the judgment adopting it are not ambiguous. The rules to be followed in arriving at the meaning of such judgments and decrees are not dissimilar to those relating to other written documents. Where the decree is clear and unambiguous, neither pleadings, findings, nor matters dehors the record may be used to change its

meaning or even to construe it. It must stand and be enforced as it speaks.

91 N.M. at 372, 574 P.2d at 591 (citations omitted).

When a writing is ambiguous, extrinsic evidence may be received to explain its meaning. If the writing is clear and unambiguous, extrinsic evidence to explain its meaning may not be considered by the court. *See Farmers and Stockmens Bank of Clayton v. Layton,* 92 N.M. 246, 586 P.2d 717 (Ct.App.1978).

■ The trial court recognized that in the absence of ambiguity, fraud or misrepresentation, the stipulation should be upheld. Yet, the court believed the stipulation to be unfair to petitioner, and sought to find an equitable remedy to avoid a potentially harsh result. The court noted:

[I] believe this is an extremely close case between what I think is the right thing to do and what the laws relating to contract require a judge to do. It's an extremely close case * * * but I'm coming down on the side of what I feel ought to have been done.

The court's desire to achieve an equitable result is laudable. That result, however, is not sustainable under the laws relating to interpretation of stipulations and judgments. *Parks v. Parks.* We conclude that the trial court erred in its determination that retirement benefits were not included in the 1973 agreement. Because respondent took all of the community property not specifically described in the agreement, and because the military retirement benefits were not specifically described, he is entitled to receive as his sole and separate property the military retirement benefits attributed to all military service, up to the time of the 1973 divorce.

## 1979 DECREE; RES JUDICATA AND COLLATERAL ESTOPPEL

■ Our determination that the 1973 decree apportions certain retirement benefits does not resolve the entire dispute between the parties. The 1973 divorce decree brought an end to the marital community. The parties, however, remarried on March

31, 1977 and created a new community. All property which was acquired by either petitioner or respondent, or both of them during the existence of this second marital relationship, which was not the separate property of the parties, was community property. NMSA 1978, § 40-3-8 (Cum. Supp.1985). The parties were divorced on December 5, 1979. The military benefits earned during the parties' second marriage come within the purview of Section 40-3-8(B) and are community property. *LeClert v. LeClert,* 80 N.M. 235, 453 P.2d 755 (1969).

■ Respondent argues that petitioner's claim for benefits earned during the second marriage is barred by application of the doctrines of collateral estoppel and *res judicata.* Collateral estoppel would bar the relitigation of issues and facts which were actually litigated and which were necessary to support the judgment in prior litigation with a different cause of action. *Poorbaugh v. Mullen,* 96 N.M. 598, 633 P.2d 706 (Ct.App.1981). Collateral estoppel would bar the subsequent litigation of issues when those issues were actually and necessarily litigated in the previous action. *Thompson v. Barngrover,* 101 N.M. 216, 680 P.2d 356 (Ct.App.1984). Such is not the case before the court. The issue of community property was not actually litigated in the 1979 divorce action. In fact, the petition alleged that there was no community property and the court's finding tracked the petition's allegation. Had the issue of military retirement benefits been litigated and ruled upon by the trial court, respondent's argument would be convincing. Here, however, the trial court did not rule on the issue because the trial court had been told there was no property to divide.

■ Similarly, respondent argues that petitioner is barred from litigating the claim under the doctrine of *res judicata.* This doctrine is applicable when four elements are met: (1) identity of parties or privies; (2) identity of capacity or character of persons for or against whom the claim is made; (3) the same cause of action; and,

(4) the same subject matter. *Three Rivers Land Co., Inc. v. Maddoux*, 98 N.M. 690, 652 P.2d 240 (1982).

*Res judicata* ordinarily applies to claims which could have been brought in the first proceeding. There is no dispute that the property issue could have, and in fact, should have been brought in the 1979 proceeding. Nevertheless, NMSA 1978, Section 40–4–20 (Repl.Pamp.1983), allows parties to bring a subsequent suit for division of property when the property was not divided in the original decree. This statutory provision specifically authorizes the type of litigation initiated by petitioner in this case. A petition to divide a previously undivided asset involves a new cause of action not barred by *res judicata. See Smith v. Walcott*, 85 N.M. 351, 512 P.2d 679 (1973) (new cause of action not barred by *res judicata*); *Zarges v. Zarges*, 79 N.M. 494, 445 P.2d 97 (1968) (when property rights are not considered or disposed of in a divorce action, a suit seeking division and distribution of the property is not barred).

## UNIFORM SERVICES FORMER SPOUSES' PROTECTION ACT

Respondent argues that petitioner's claim for benefits is barred by provisions of the Uniform Services Former Spouses' Protection Act, 10 U.S.C. 1408(d)(2) (West 1983). Respondent contends this provision precludes the division of military retirement benefits unless the parties were married for ten years. In support of his position, respondent relies upon *In re Marriage of Smith*, 100 Wash.2d 319, 669 P.2d 448 (1983), and *In re Marriage of Wood*, 34 Wash.App. 892, 664 P.2d 1297 (1983). Neither of these cases address the issue raised by respondent. Rather, both cases simply refer to, without discussing, the ten-year requirement.

In *Oxelgren v. Oxelgren*, 670 S.W.2d 411 (Tex.Ct.App.1984), the court addressed the issue and noted that Section 1408(d)(2) dealt only with a ten-year marriage requirement for direct payments by the Secretary of Defense to the non-member spouse. The court concluded, "[T]he language in subsection (d)(2) regarding payments 'to be made under this section' refers to payments which are direct payments made by the Secretary". *Oxelgren* at 412. In *Wood and Wood*, 66 Or.App. 941, 676 P.2d 338 (1984), the court rejected the identical argument being advanced by respondent. In *Wood*, the court concluded, as in *Oxelgren*, that the language in (d)(2) applied only to direct payments by the Secretary. Finally, in *Konzen v. Konzen*, 103 Wash.2d 470, 693 P.2d 97 (1985) the court found the statutory language involved to be ambiguous and looked to the legislative history to resolve the ambiguity. The court concluded that "Congress did not intend to limit the application of the USFSPA to marriages lasting over ten years during the service member's military career." *Konzen*, 693 P.2d at 99. We similarly reject respondent's argument.

The Uniform Services Former Spouses' Protection Act permits courts to classify military retirement allowances according to state law. 10 U.S.C. § 1408. The Act was passed in response to the United States Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which held that federal law barred the States from applying their own law to divide military retirement pay. With the congressional action in adopting the Uniform Services Former Spouses' Protection Act, retirement funds could again be divided in accordance with the States' community property laws. Section 40–3–8(B) has no ten-year requirement before the property can be considered as community property. We determine that the ten-year requirement referred to in Section 1408(d)(2) is simply a requirement for direct payments by the Secretary.

## BENEFITS RECEIVED BY RESPONDENT PRIOR TO FILING OF THE PETITION

The court determined that while petitioner was entitled to her portion of the communal share of retirement benefits, she could not collect the portion of benefits which were received by respondent for the

period prior to the filing of the petition. The court found that under the circumstances of the case, it would be unfair and would shock the conscience of the court to allow petitioner to receive any portion of the retired pay which was received by her husband from the time he retired until petitioner filed her motion. This equitable approach was impliedly approved by the court in *Plaatje v. Plaatje*, 95 N.M. 789, 626 P.2d 1286 (1981). Under the circumstances that existed at the time of the trial, the trial judge's resolution was appropriate. Those circumstances, however, have changed by our determination that petitioner is not entitled to retirement benefits that accrued prior to her second marriage to respondent.

## LACHES AND WAIVER

While respondent raises laches or waiver as a defense to petitioner's claim, the trial court found to the contrary and respondent does not attempt to demonstrate a lack of evidence to support the finding.

## CONCLUSION

We conclude that the trial court's division of the benefits earned during the first marriage be reversed; the trial court's determination that petitioner is entitled to benefits earned during the second marriage be affirmed, with the exception that a new percentage of entitlement be calculated. The trial court found petitioner was entitled to 30.5% of the retirement benefits based upon 151 months of marriage compared to respondent's 247 months of military service. There are now only thirty-two months of marriage that can be considered in relation to respondent's 247 months of military credits. We remand this matter to the trial court to calculate the percentage of petitioner's entitlement to respondent's military benefits and to determine whether petitioner should receive any portion of the benefits attributable to the second marriage for the time prior to the filing of her petition for division of property.

Respondent is awarded his appellate costs; the parties shall bear their own attorney fees.

IT IS SO ORDERED.

WOOD and ALARID, JJ., concur.