This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38500**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

   Petitioner-Appellee,

v.

**ELVIA D.,**

   Respondent-Appellant,

and

**BRANDON E.,**

   Respondent,

**IN THE MATTER OF ELIJAH E.,**

   Child.

and

**No. A-1-CA-38603**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

   Petitioner-Appellee,

v.

**BRANDON E.,**

   Respondent-Appellant,

and

**ELVIA D.,**

Respondent,

**IN THE MATTER OF ELIJAH E.,**

Child.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Grace B. Duran, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant Elvia D.

Susan C. Baker
El Prado, NM

for Appellant Brandon E.

Rosenda M. Chavez
Sunland Park, NM

Guardian Ad Litem

## DECISION

**YOHALEM, Judge.**

**{1}** Elvia D. (Mother) and Brandon E. (Father) (collectively, Parents) appeal the district court's adjudication that Child was abused by Mother, pursuant to NMSA 1978, Section 32A-4-2(B)(2) (2018), and neglected by both Parents, pursuant to NMSA 1978, Section 32A-4-2(G)(3) (2018). Because there is a shared record in the district court and the facts and law are closely related, we exercise our discretion to consolidate Parents' appeals for decision. *See* Rule 12-317(B) NMRA. Unpersuaded, we affirm.

## BACKGROUND

**{2}** The following evidence was introduced at the adjudicatory hearing on August 2, 2019. On May 26, 2019, Parents brought one-month-old Child to the hospital for treatment of two red marks on his head and swelling. The hospital staff determined that Child had a fractured skull and a subdural hematoma. Suspecting abuse, doctors did a full skeletal survey of Child the next day and discovered that Child also had two parallel rib fractures on each side of his body. No healing of the rib fractures was visible on Child's x-rays.

**{3}** When asked by hospital staff, Las Cruces Police Detective Veronica De La O, Children, Youth and Family Department's (CYFD) caseworker, Richard Hernandez, and counsel at the adjudicatory hearing what happened, Mother described waking up at 3:00 a.m. on May 26, 2019, to breast-feed Child. Mother reported seeing no visible head injuries on Child when she went to bed at 10:30 p.m., or when she woke up at 3:00 a.m. Mother described sitting on the edge of the bed to breast-feed Child and falling asleep with Child still in her arms. She claimed she woke up as Child was falling to the floor. Mother reported that Child began crying, sounding like he was in distress. Mother picked Child up from the floor and called to Father who was sleeping in the living room.

**{4}** Father testified at the adjudicatory hearing that he was asleep on the living room couch and woke up around 3:00 a.m. on May 26, 2019, because he heard Child crying. Father described Child's cry as different than he had heard before, describing it as a distressed, "something-is-wrong" cry. Father testified he immediately went into the bedroom to check on Child. Father saw two red marks on Child's head and noticed swelling on the left side of Child's head. Both Parents testified that Father told Mother that they needed to take Child to the hospital. They immediately left for the hospital.

**{5}** When Child's rib fracture was diagnosed the next day, neither parent offered any explanation as to how or when this injury occurred. At the adjudicatory hearing, each parent testified that other than the fall from the bed, which they understood could not have caused the injuries, they did not know how or when Child was hurt. Mother indicated she was Child's primary caretaker during the day while Father worked. When Father returned home from work, he helped care for the baby.

**{6}** Pediatric Nurse Practitioner Vanessa Velez and Doctor Karen Campbell testified as experts in child abuse. Both Nurse Velez and Dr. Campbell testified that Child's injuries were inconsistent with Mother's statement about Child falling from the bed. Child's indented skull fracture could not have been caused by a fall onto a flat surface— the indentation showed that force had been directed to that spot on Child's head. Child's parallel broken ribs on each side of his chest were consistent with a compression injury, caused by squeezing or pushing with equal pressure on both sides of Child's chest. Both experts concluded that Child had been physically abused: he was injured through nonaccidental inflicted trauma or abuse.

**{7}** Dr. Campbell was asked about the timing of Child's rib fractures in relation to his head injury. Dr. Campbell testified that she was unable to determine from Child's x-rays

whether the skull fracture and rib fractures occurred at the same time. The appearance of the skull injury was consistent with Parents' claim that Child had been injured shortly before arriving at the hospital early on the morning of May 26, 2019. The rib injury, however, could have occurred seven to ten days before May 27, 2019, the date the x-rays were taken.

{8}	When told that test results indicated Child's ribs could have been broken seven to ten days before May 27, 2019, Mother reported that she had noticed that Child had been unusually fussy, squirming like he was in pain for several days before May 26, 2019, when the head injury occurred. Mother claimed that she was concerned and reported the squirming to Child's pediatrician. Mother's claim to have reported the squirming to Child's pediatrician was contradicted by Dr. Campbell's review of Child's medical records. Dr. Campbell reported that Child's last visit to the pediatrician was on May 20, 2019, before the squirming and discomfort described by Mother. Mother had not discussed any chest pain or injury with the doctor.

{9}	From Child's hospitalization through the adjudicatory hearing, Father continued to accept Mother's claim that Child's injuries were caused by an accidental fall from bed. Even after hospital staff and medical experts told him that neither Child's skull fracture and hematoma, nor the rib fractures could have been caused by a fall, Father refused to acknowledge that Mother could have abused Child. At the adjudicatory hearing, Father testified that he had "no suspicions of [Mother]," even though he understood and claimed to accept that Child's indented skull fracture and broken ribs could not have happened the way Mother described.

{10}	Father appeared to hospital staff to be hesitant to explore the extent of Child's injuries and their cause. Father expressed concern about the full-body scan of Child and consistently denied any knowledge of other injuries to Child, or how or when they might have occurred. Father refused at the adjudicatory hearing to acknowledge that Mother had hurt Child. When asked if he would be willing to keep Mother away from Child if Child were returned to his care, Father responded that "my biggest concern" was to maintain Child's bond with Mother and that he would allow her to visit Child.

{11}	On May 31, 2019, CYFD filed an abuse and neglect petition against both Parents. In the petition CYFD alleged abuse, pursuant to Section 32A-4-2(B)(2), against both Parents. Section 32A-4-2(B)(2) defines an "abused child," in relevant part, as a child "who has suffered physical abuse . . . inflicted or caused by the child's parent[s]." The petition also alleged neglect, pursuant to Section 32A-4-2(G)(3), against both Parents. A "neglected child" is defined by Section 32A-4-2(G)(3) as a child "who has been physically . . . abused, when the child's parents, guardian or custodian knew or should have known of the abuse and failed to take reasonable steps to protect the child from further harm." The other allegations in the petition were not pursued at the adjudicatory hearing and are not before this Court on appeal.

{12}	Following the adjudicatory hearing, the district court entered a separate judgment as to each Parent. The district court held that Mother had physically abused Child,

pursuant to Section 32A-4-2(B)(2). In support of this conclusion, the district court found that Child had suffered injuries while alone with Mother; that neither Child's head injury nor his rib fractures were consistent with Mother's explanation of Child falling from the bed onto the floor; and that all of Child's injuries, including the four rib fractures, were caused by "nonaccidental trauma" inflicted on Child. The district court held as well that Mother had neglected Child, pursuant to Section 32A-4-2(G)(3). The judgment states: "CYFD has proven by clear and convincing evidence that [Child] has been physically abused when [Mother] knew or should have known of the abuse and she failed to take reasonable steps to protect [C]hild from further harm."

{13}     As to Father, the district court's adjudicatory judgment first held that CYFD had "*not* proven by clear and convincing evidence that [Child] has suffered physical abuse caused by [Father]." The district court found, however, that Father neglected Child, pursuant to Section 32A-4-2(G)(3), stating that "CYFD has proven by clear and convincing evidence that [Child] has been physically abused when [Father] knew or should have known of the abuse and he failed to take reasonable steps to protect [C]hild from further harm." In support of the district court's conclusion that Father neglected Child, the court found that Father denied knowledge of Child's rib injuries and of any event that might have led to those injuries; expressed concern about allowing doctors to take the x-rays that discovered Child's rib fractures; consistently refused to acknowledge that Mother hurt Child; attempted to deflect suspicion from Mother; and that, by staying with Mother and refusing to acknowledge her abuse of Child, rendering himself incapable of protecting Child.

## DISCUSSION

### I.     The Adjudication of Abuse and Neglect by Mother

### A.     Judgment Against Mother Pursuant to Section 32A-4-2(B)(2) Was Supported by the Court's Findings

{14}     On appeal, Mother first claims that the district court's adjudication of abuse, pursuant to Section 32A-4-2(B)(2), is invalid because the court failed to identify which parent was the perpetrator of the abuse by clear and convincing evidence. Mother argues that only Section 32A-4-2(B)(1), rather than Section 32A-4-2(B)(2), allows a court to find abuse without determining which parent, specifically, abused a child.

{15}     Mother's argument misconstrues the district court's adjudicatory judgment. The district court identified Mother, specifically, as Child's abuser. Pursuant to Section 32A-4-2(B)(2), the district court held that "[Child] has suffered physical abuse caused by [Mother]." The district court did not find that Father abused Child. Because the district court's findings on the identity of the perpetrator of the abuse are neither uncertain nor doubtful, we do not further address Mother's argument that the district court failed to identify which parent perpetrated the abuse. *See Pacheco v. Quintana*, 1986-NMCA-007, ¶¶ 9-11, 105 N.M. 139, 730 P.2d 1 (stating that when a court's findings are clear on their face, the findings will be applied as written).

**B.      There Was Sufficient Evidence That Mother Abused Child**

**{16}**    Mother next argues that the evidence was insufficient to support the district court's holding that Mother was the perpetrator of Child's abuse. Mother challenges only the court's ultimate finding that she caused or inflicted Child's injuries. Mother does not contend that the district court's findings attributing Child's injuries to physical abuse and concluding that the injuries could not have been caused by the fall from the bed, as Mother claimed, are in error or lack support in the record. Mother argues only that the evidence in the record could support an alternative inference that Mother had a credible, albeit mistaken belief that the fall from the bed caused Child's head injury, when in fact, the injury could already have occurred earlier in the evening. Mother claims in support of her proposed alternative inference that "[t]here was no medical testimony . . . that the injuries . . . could not have been overlooked earlier in the evening."

**{17}**    Mother's argument asks this Court to disregard the standard of review applied to a district court's findings of fact and determinations of credibility on appeal. This Court is required to draw all reasonable inferences from the evidence in favor of the district court's decision, and disregard all inferences to the contrary. *State ex rel. Children, Youth & Families Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 12, 130 N.M. 781, 32 P.3d 790. Under this standard, we cannot replace the reasonable inferences drawn by the district court from the evidence in the record with the strained inferences suggested by Mother on appeal. *See State v. Jason L.*, 2000-NMSC-018, ¶ 11, 129 N.M. 119, 2 P.3d 856 ("[W]e will draw all inferences and indulge all presumptions in favor of the district court's ruling."). Nor will we disturb the district court's determination that Mother's testimony was not credible. We give special deference to the district court's evaluation of the credibility of the witnesses when, as is the case here, the district court is acting as the fact-finder. That is because an appellate court is "unable to view the witness's demeanor or manner of speech, and therefore [is] not in a position to evaluate many of the aspects of witness credibility that the trier of fact may evaluate." *State v. Evans*, 2009-NMSC-027, ¶ 37, 146 N.M. 319, 210 P.3d 216. Applying these standards, we see no error in the district court's determination that Mother's testimony about the cause of Child's injuries was not credible. We also see no error in the reasonable inference drawn by the district court that Mother, who was alone with Child when Child's skull was fractured, and who had no reasonable explanation for any of Child's injuries, was the abuser. Because the district court's findings are supported by substantial evidence of a clear and convincing nature, we affirm the district court's adjudication of abuse of Child, pursuant to Section 32A-4-2(B)(2), as to Mother.

**II.      There Was Sufficient Evidence of Neglect by Both Parents**

**{18}**    Next, both Parents challenge the sufficiency of the evidence to support the district court's adjudication of neglect of Child by both Parents, pursuant to Section 32A-4-2(G)(3). Section 32A-4-2(G)(3) provides that a child has been neglected if he "has been physically . . . abused, when the child's parent, guardian or custodian knew or should have known of the abuse and failed to take reasonable steps to protect the child from further harm." Both Parents argue that the evidence does not support the district

court's finding that each of them "knew or should have known of the abuse" and that they "failed to take reasonable steps to protect . . . [C]hild from further harm[,]" as required by Section 32A-4-2(G)(3). We disagree.

## A.    Mother's Neglect of Child

{19}    Because we have affirmed the district court's adjudication of Child as abused by Mother, under Section 32A-4-2(B)(2), it is unnecessary to determine whether CYFD also proved Mother neglected Child, under Section 32A-4-2(G)(3). *See State ex rel. Children, Youth & Families Dep't v. Shawna C.*, 2005-NMCA-066, ¶ 16, 137 N.M. 687, 114 P.3d 367. We nevertheless briefly address Mother's claims pertaining to neglect.

{20}    Mother first argues that the district court's findings of both abuse and neglect conflict: that she could not be found to have simultaneously neglected and abused Child. Mother claims that she "either committed the abuse herself, or allowed it to occur; she could not have done both." Mother's argument incorrectly assumes that the district court's findings of neglect and abuse rely on the same conduct. Mother overlooks the evidence in the record concerning the time period immediately before Child's head injury that supports a determination that Child's rib fractures resulted from abuse and occurred prior to the head injury. Mother's conduct during this period forms an independent basis for the district court's finding that Mother both knew or should have known of the abuse and failed to take reasonable steps to protect Child from further harm.

{21}    Undisputed medical testimony at the adjudicatory hearing establishes that Child suffered four rib fractures caused by someone squeezing or compressing his upper chest from both sides, and that these fractures could have occurred seven to ten days before May 27, 2019. Mother admitted in her testimony at the adjudicatory hearing that she had noticed that Child was squirming in pain for several days prior to May 26, 2019, the date Child's skull was fractured. Mother claimed that Child's distress was so concerning that she brought it to the attention of Child's pediatrician. A review of the medical records, however, showed that Mother did not seek care for Child in response to Child's evident distress. Mother's failure to seek care for Child, knowing or having reason to know that Child had been injured, supports the district court's holding that Mother neglected Child, pursuant to Section 32A-4-2(G)(3).

## B.    Father's Neglect of Child

{22}    Father argues that the district court overlooked favorable evidence about Father's prompt and appropriate action in taking Child to the hospital following the injury to Child's head. Father, however, does not claim that the specific findings of fact, which support the court's adjudication of neglect by Father, lack support in the record.

{23}    Father's argument conflicts with the standard of review applied by this Court on appeal. Our standard of review requires us to determine whether the district court's conclusion, when viewed in the light most favorable to the decision below, was

supported by substantial evidence. *See State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 38, 421 P.3d 814. "Our standard of review does not require us to determine whether the district court could have reached a different conclusion." *Id.* (alteration, internal quotation marks, and citation omitted). "Even in a case involving issues that must be established by clear and convincing evidence, it is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies." *State ex rel. Dep't of Human Servs. v. Williams*, 1989-NMCA-008, ¶ 7, 108 N.M. 332, 772 P.2d 366.

**{24}** When the proper standard of review is applied, it is apparent that the district court's findings of neglect of Child by Father are supported by substantial evidence of a clear and convincing nature. The district court relied on undisputed evidence that Father refused to accept the fact that Child's injuries were caused by Mother. The district court found that Father attempted to deflect suspicion from Mother during Child's hospitalization, and was not interested in uncovering the cause of Child's injuries. The district court also found that Father failed to protect Child from further harm by refusing to either separate from Mother or deny Mother visitation. We conclude that these findings of the district court are supported by substantial evidence in the record. We therefore affirm the district court's adjudication of neglect by Father, pursuant to Section 32A-4-2(G)(3).

**CONCLUSION**

**{25}** For the reasons stated above, we affirm the district court's adjudication of abuse of Child by Mother, pursuant to Section 32A-4-2(B)(2), and of neglect of Child by both Parents, pursuant to Section 32A-4-2(G)(3).

**{26}  IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**