730 P.2d 461

**RUIDOSO STATE BANK,**
Plaintiff-Appellant,

v.

**Michael M. CASTLE, et al.,**
Defendants-Appellees.

No. 16259.

Supreme Court of New Mexico.

Dec. 23, 1986.

Ronald G. Harris, Parsons, Harris & Bryant, P.C., Ruidoso, for plaintiff-appellant.

Mel B. O'Reilly, Ruidoso, S. Thomas Overstreet, Alamogordo, for defendants-appellees.

**OPINION**

WALTERS, Justice.

The question on this appeal is whether a mortgage containing a "dragnet clause" covers preexisting debts to the lender in all cases, whether or not those debts are related to the purpose of the loan for which the mortgage is obtained, to give the lender in a foreclosure proceeding a priority position as to those debts over judgments obtained by other creditors before foreclosure. In the circumstances of this case, we hold it does not and we affirm the trial court.

**FACTS**

Appellant Ruidoso State Bank (Bank) brought a foreclosure suit against Michael Castle and Ruth Castle (Castles); Allied Stores, Inc., d/b/a T–Bird Home Centers (Allied); Otero County Electric Cooperative, Inc. (Otero) and other judgment creditors of Castles. Allied and Otero filed counter- and cross-claims alleging superior rights in the property sought to be fore-

closed. Bank obtained, before trial, a default judgment against Castles; the other creditors failed to appear and, consequently, their relative priorities were determined to follow those of the litigating parties. The district court established a priority in favor of the Bank for the amount of a renewal note and in favor of appellees Allied and Otero on their respective judgment claims.

The record discloses that on March 30, 1982, Castles executed and delivered to the Bank a $10,100 commercial promissory note ("Note 1"), secured by a Loraine 20-ton crane. On June 28, 1982, Michael Castle executed a second promissory note ("Note 2") for $4,334.64, secured by a 1979 Chevrolet El Camino. Thereafter, Castles signed a real estate mortgage note for $12,000 ("Note 3") and a mortgage, both dated July 30, 1982, covering Lots 1, 3 and 5 of Thunderbird Hills Subdivision. A second mortgage dated September 8, 1982, but acknowledged on July 30, 1982 was given by Castles to Bank covering Lot 6 of Thunderbird Hills Subdivision. Both mortgages secured the July 30, 1982 "Note 3." Each mortgage contained a dragnet clause securing "all loans, advances, indebtedness, or liabilities, whether now existing or which hereafter come into existence * * * including any extensions and renewals thereof * * * * "

On December 15, 1982, Allied obtained a money judgment against Michael Castle in the sum of $12,978.27, plus interest, and recorded its judgment the next day. On February 8, 1983, Otero obtained and recorded a money judgment against the Castles in the sum of $666.60, plus interest.

On August 24, 1983, Castles executed in favor of Bank a $6,000 promissory note ("Note 4"), renewing or extending Note 3. Before its execution, however, Bank had released Lots 1 and 5 from the mortgage securing Note 3, and Note 4 reflects that Castles gave a security interest in Lots 3 and 6, and that the note was secured by the July 30 and September 30, 1982 mortgages.

On November 28, 1983, the Bank obtained a default deficiency judgment against Michael Castle in the amount of $6,032.12, plus interest, after he had defaulted on Notes 1 and 2. That judgment was recorded on December 1, 1983.

Castles thereafter defaulted on Note 4, and this action resulted to foreclose on Lots 3 and 6 and to establish the priorities of creditors to the proceeds. The court allowed the Bank to amend its complaint at trial, to assert that the dragnet clauses contained in the mortgages should be construed to secure Bank's deficiency judgment.

Finding that the Bank's 1982 mortgages constituted valid first liens against Lots 3 and 6, the court awarded the Bank $6,378 plus interest, and $600 in attorney's fees. The court denied any priority to Bank under the dragnet clause of the mortgages with respect to the deficiency judgment, and directed that the other claims against Castles be paid from any excess sale proceeds in the following order:

1. To Allied on its judicial lien;
2. To Otero on its judicial lien;
3. To the Bank on its judicial lien;
4. To non-participating creditors.

## DISCUSSION

A provision in a mortgage in which the mortgagor gives security for past and future advances as well as present indebtedness has been called a "dragnet clause." *Uransky v. First Federal Savings & Loan Association,* 684 F.2d 750, 756 n. 5 (11th Cir.1982). In *Clovis National Bank v. Harmon,* 102 N.M. 166, 692 P.2d 1315 (1984), this Court found that a dragnet clause in a real estate mortgage effectively secured all preexisting and future debts incurred by the maker of the note. In the present case, both of the 1982 real estate mortgages to the Bank from the Castles provided, in part:

This mortgage secures the performance of the following obligations:

* * * * * *

(b) Payment of all loans, advances, indebtedness, or liabilities, whether now existing or which hereafter come into

existence, whether matured or unmatured, whether direct or indirect, whether obligatory or discretionary, absolute or contingent, primary or secondary, including any extensions and renewals thereof, due mortgagee from mortgagor regardless of how acquired by mortgagee, not to exceed at any one time the maximum sum of $24,000.00, the advancement of which sum is discretionary but not obligatory upon mortgagee.

We think the trial court was correct, however, in declining to read *Harmon* as establishing as a matter of law that any holder of a mortgage having a dragnet provision has, automatically, with respect to all preexisting and future obligations, a priority date as of the date of the mortgage.

We based our decision in *Harmon* on the substantial evidence to support the trial court's ruling. As we noted there, substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 168, 692 P.2d at 1317, quoting *Toltec International, Inc. v. Village of Ruidoso*, 95 N.M. 82, 84, 619 P.2d 186, 188 (1980). An appellate court does not weigh the evidence; rather, it resolves "all disputed facts in favor of the successful party, indulge[s] all reasonable inferences in support of a verdict, and disregard[s] all evidence and inferences to the contrary." *Id.* at 168–69, 692 P.2d at 1317–18. In *Harmon*, then, this Court, in its appellate role, simply concluded that based on the record before it the trial judge had not erred in deciding that the dragnet clause contained in the real estate mortgage secured other notes involved in that particular case. Having said here, however, that dragnet clauses do not, as a matter of law, secure all debts between parties, we must then determine if substantial evidence supports the trial court's decision.

Dragnet clauses which purport to secure all debts, past, present, and future, between parties to a security agreement generally are disfavored and thus strictly construed. *Uransky v. First Federal Savings & Loan Association.* Aside from the actu-

al language of the provision, construction should focus on the intent of the parties as evidenced by the circumstances surrounding the mortgage and the nexus between the mortgage and the notes involved. *In re Bass*, 44 B.R. 113 (Bkrtcy.N.M.1984). It is apparent that this is what the trial judge did. For instance, in his Finding 22, the judge determined:

> The course of conduct between Plaintiff and Defendant Castle indicates that the real property was security for the August 24, 1983 note only and not as collateral security for any other note of Castle to Plaintiff.

That finding was no doubt influenced by Bank's actions in the deficiency proceedings. Bank had already filed suit on Notes 1 and 2 when on August 24, 1983 it renewed Castles' June 30, 1982 Note 3, and it had released two of the lots secured by the mortgages. Additionally, the complaint on Notes 1 and 2 sought (and Bank obtained) foreclosure on the personal property collateral securing those notes. In fact, when Bank sued on Notes 1 and 2 in January 1983, both mortgages already had been recorded, but it was not contended by Bank at the time of suit that the mortgages also secured Notes 1 and 2.

Nevertheless, if the connection between the first two notes and the later mortgages is sufficiently related, the court could give effect to the dragnet clause despite the lack of evidence of actual expressed intent. *In re Bass*, 44 B.R. at 116. On that question, the trial judge found:

> 24. The general purpose of the August 24, 1983 promissory note is inconsistent with any interpretation other than that the real property described as Lots 3 and 6, Thunderbird Hills, was being held as collateral for payment of said August 24, 1983 promissory note.

Note 1 (March 30, 1982), secured by a Loraine 20-ton crane, shows that it was executed for a business purpose. Note 2 (June 28, 1982), secured by a 1979 Chevrolet El Camino, does not indicate its purpose. The July 30, 1982 Note 3 was executed by Castles in their personal capacity but, again,

does not disclose the purpose for which the loan was made. The purpose of the August 24, 1983 Note 4 was "Lots for resale/Renewal decrease conforming." From the record, then, we are unable to determine that any of the loans are sufficiently related to each other to satisfy the nexus requirement. *Cf. New Mexico Bank and Trust Co. v. Lucas Brothers,* 92 N.M. 2, 4, 582 P.2d 379, 381 (1978) (sufficient relationship existed between mortgage with a dragnet clause and subsequent notes to give bank's lien first priority, against second mortgagee with notice, for an amount equal to the face value of bank's mortgage).

We are satisfied that adequate and substantial evidence supports the trial court's findings that the Bank never intended for the mortgages to secure preexisting notes and security agreements, and that there was an insufficient nexus to relate Notes 1 and 2 to the mortgages. Accordingly, we affirm the order of priority declared by the court below.

IT IS SO ORDERED.

FEDERICI, J., concurs.

STOWERS, C.J., concurs in result.