1998-NMCA-136

965 P.2d 939

**In the Matter of the ESTATES OF Maureen V. HAYES, and James Arthur Hayes, husband and wife, deceased.**

**Glenn E. HARRELL, Petitioner–Appellee,**

v.

**Fred Lee HAYES and Mary Virginia Rector, Respondents–Appellants.**

No. 17962.

Court of Appeals of New Mexico.

Aug. 25, 1998.

Kevin T. Riedel, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Las Cruces, for Petitioner-Appellee.

Beverly J. Singleman, Hubert & Hernandez, P.A., Las Cruces, for Respondents-Appellants.

OPINION

FLORES, Judge.

{1} This is an appeal of an intestacy and heirship determination arising from the death of an elderly couple. Through what appears to be a misapplication of the 120-hour rule, *see* NMSA 1978, § 45-2-104 (1993), the district court found that the husband was the heir of his wife and that the husband's brother and sister were his heirs. Due to a clerical mistake, however, the original probate order failed to state explicitly that the husband was the wife's heir. After time had elapsed for an omitted heir action under the Uniform Probate Code, a brother of the wife initiated an heirship proceeding. He contended that: (1) the wife's heirs were not ascertained in the original probate order; and (2) that he, another brother, a niece, and a nephew were the wife's heirs. The district court then amended the original probate order to declare explicitly that the husband was the wife's heir. The court also stated that the wife's brother would have an action under the omitted-heir statute. Thereafter the wife's brother brought such an action, and the district court declared that he, another brother, and a niece and nephew were the wife's heirs. The husband's heirs appealed. We reverse and remand.

**FACTUAL AND PROCEDURAL BACKGROUND**

{2} Eighty-two-year-old James Hayes and 74-year-old Maureen Hayes, husband and wife, were found dead in their apartment in Las Cruces on November 6, 1993. James Hayes' niece, Janis Rogers, initiated an heirship proceeding on February 15, 1994. James and Maureen had no children. James was survived by a brother, Fred Hayes, and a sister, Mary Rector. Maureen Hayes had been estranged from her birth family for many years, but because the last known address for her mother was in the Ft. Worth-Dallas area, death notices were published in the Ft. Worth newspaper to notify any heirs of Maureen. Rogers' petition asked the court to enter an order finding that James and Maureen died intestate, that Maureen be deemed to have predeceased James, that James was the heir and sole successor of the community property, and that Rogers be ap-

pointed personal representative of the "[e]state of James Arthur Hayes or [the estates of] James Arthur Hayes and Maureen Hayes." The district court entered an order on March 25, 1994 [original probate order]. The court found, among other things, that James and Maureen died intestate, that by application of the 120-hour rule, Maureen is deemed to have predeceased James, and that the heirs of James are "determined accordingly." James' heirs were declared to be his brother Fred Hayes and sister Mary Rector. In April and July 1994, Rogers distributed the community property to James' heirs, Hayes and Rector. We note that the district court did not appoint a personal representative of Maureen's estate. However, as we discuss below, the district court found that James was Maureen's heir. Consistent with that reasoning, the only surviving estate to be administered was that of James.

{3} More than a year later, on August 7, 1995, Maureen's brother Glenn Harrell initiated an intestacy and heirship proceeding as to Maureen, filing a petition stating that Maureen died intestate and that her heirs are her brothers, Glenn and R.G. Harrell, and a niece and nephew. The petition asked the court to appoint Glenn Harrell to be Maureen's personal representative and to determine the heirs. Rector and Hayes filed a motion to dismiss Harrell's petition on October 3, 1995, stating that Harrell's motion was improper, that the heirs had already been determined and that the only relief available to Harrell was under Section 45–3–412 of the Uniform Probate Code. *See* NMSA 1978, § 45–3–412 (1995) (providing for appeal of testacy orders).

{4} After a hearing, the district court, on November 21, 1995, amended the original probate order determining intestacy and heirship. The significant difference between the amended order and the original intestacy/heirship order is that the amended order explicitly stated that James was the "true and rightful heir and sole successor owner of the community property the parties owned at their deaths." The court, also on November 21, 1995, entered an "Order Granting Relief Pursuant To Rule 1–060 ..." that amended the original probate order. *See* Rule 1–060

NMRA 1998 (providing for relief from judgment or order).

{5} The amended order made three significant points. First, it found that the original probate order omitted language ascertaining Maureen's heirs, and that failing to include this language in the original order was an "oversight or omission" and "a clerical mistake." Second, it ordered that the amended order would not be entered nunc pro tunc, due to the "equities of [the] action." And third, it dismissed Harrell's intestacy and heirship petition, stating that he had a remedy under Section 45–3–412 of the Uniform Probate Code.

{6} Harrell did not appeal the Rule 1–060 relief and the entry of the amended order explicitly naming James as Maureen's heir. He contends that the date of the order declaring intestacy and heirship as to Maureen was the date of the amended order, November 21, 1995, not March 25, 1994, the date of the original probate order. On January 22, 1996, he filed a petition under Section 45–3–412 to modify the amended order of intestacy and heirship, and to be appointed personal representative of Maureen's estate. Hayes and Rector filed a motion to dismiss Harrell's petition. After a hearing, the district court ascertained that Harrell was Maureen's heir and appointed him to be her personal representative in an order dated October 11, 1996. Rector and Hayes appealed from this order.

## DISCUSSION

{7} Appellants Hayes and Rector assert that: (1) the original probate order established the heirs of both James and Maureen; (2) that Harrell improperly used Section 45–3–412 to collaterally attack the original probate order ascertaining that Maureen predeceased James and that James was Maureen's sole heir; and (3) Harrell's Section 45–3–412 action was untimely and should have been dismissed.

### Standard of Review

{8} The facts in this case are not in dispute. The standard of review, therefore, is whether the district court correctly applied the law to the facts. *See Sunwest Bank of*

*Albuquerque, N.A. v. Colucci,* 117 N.M. 373, 375, 872 P.2d 346, 348 (1994).

### Challenging a Determination of Heirs

{9} A party claiming to be an omitted heir, as Harrell does, may challenge an order declaring intestacy and determining heirs under the Uniform Probate Code by petitioning the court to modify or vacate a probate order. *See* § 45–3–412. The pertinent section of the Uniform Probate Code states that:

if intestacy of all or part of the estate has been ordered, the determination of heirs of the decedent may be reconsidered if it is shown that one or more persons were omitted from the determination and it is also shown that the persons were:

(a) unaware of their relationship to the decedent;

(b) were unaware of his death; or

(c) were given no notice of any proceeding concerning his estate except by publication[.]

Section 45–3–412(A)(2)(a–c). It is under this section of the Uniform Probate Code that Harrell raised his challenge to the order declaring that James was Maureen's heir.

{10} Section 45–3–412 sets time limits for challenging an heirship determination: six months after an estate is closed by filing a closing statement, or twelve months after the entry of the heirship order sought to be vacated. *See* § 45–3–412(A)(3)(a), (c). The key determination, then, is the date of the triggering event. Harrell's theory is that his January 22, 1996 petition is timely because the triggering event was the amended order entered November 21, 1995, explicitly stating that James was the heir of Maureen. We do not agree. Because Maureen's heirs were ascertained in the original probate proceeding, which order was entered on March 25, 1994, the last date Harrell could bring an omitted heir challenge was March 25, 1995.

### The District Court Implicitly Ascertained Maureen's Heirs in its March 25, 1994 Probate Order

■ {11} The facts surrounding the probate of the estate demonstrate that the district court implicitly ascertained Maureen's heir and that her heir was her husband, James. The caption of the probate action was styled "In the Matter of the Estates of Maureen V. Hayes and James Arthur Hayes husband and wife, deceased." Paragraph eleven of the original probate petition states "[i]t is ... unknown whether or not Maureen Hayes has any heirs other than her husband." The original probate petition seeks to appoint Rogers as personal representative for "the estate of James Arthur Hayes or the Estates of James Arthur Hayes and Maureen Hayes." The petition asks the court to declare that "James Arthur Hayes is the true and rightful heir and sole successor owner of the community property the parties owned at their deaths."

■ {12} Personal representative Rogers attempted to locate any missing heirs of Maureen by publishing death notices in a Ft. Worth, Texas, newspaper. Rogers noted that Maureen had been estranged from her family of origin for twenty years, that the last known address of her mother was in the Ft. Worth–Dallas area, and that publishing notices in a major newspaper in that area presented the best chance of locating missing heirs of Maureen. The notice was addressed to "UNKNOWN HEIRS OF MAUREEN V. HAYES, DECEASED, AND ALL UNKNOWN PERSONS WHO HAVE OR CLAIM ANY INTEREST IN THE ESTATE OF MAUREEN V. HAYES, DECEASED, OR IN THE MATTER BEING LITIGATED IN THE HEREINAFTER MENTIONED HEARING." In pertinent part, the notice stated that Rogers asked the court to declare that James is "the true and rightful heir and sole successor owner of the community property the parties owned at their deaths."

{13} It is unclear why, but the original probate order (prepared by Roger's attorney and signed by the district court judge) included all the findings sought except for the explicit statement that James was Maureen's heir. Subsequently, however, the district court amended the original probate order under Rule 1–060(A), stating that the original order omitted the statement that James was Maureen's heir, that the omission was a clerical error, and that the probate order is to be

amended to include language stating that James is Maureen's heir.

*Because Maureen's Heirs Were Ascertained in the March 25, 1994 Probate Order, Amending the Order Under Rule 1–060(A) Was Proper*

■ {14}  As a preliminary matter, correcting the original probate order was proper under Rule 1–060(A).  There are few New Mexico cases construing Rule 1–060(A), but the New Mexico rule is identical to the comparable federal rule.  *Compare* Rule 1–060(A), *with* Federal Rule of Civil Procedure 60(a).  We may look to cases interpreting Federal Rule 60(a) for guidance on Rule 1–060(A).  *See Century Bank v. Hymans,* 120 N.M. 684, 690, 905 P.2d 722, 728 (Ct.App. 1995).

{15}  Pursuant to Rule 1–060(A), "[c]lerical mistakes in judgments, orders or parts of the record[,] and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party . . . ."  The kinds of mistakes that can be corrected under a Rule 1–060(A) motion are:  (1) transcription and mathematical errors;  (2) ambiguities in a judgment (e.g. in order to clarify the court's original intention when a judgment is vague);  and (3) errors of omission, but only if the omission misrepresented the court's intention.  *See* 12 James Wm. Moore, *Moore's Federal Practice* § 60.11 (3d ed.1998) [hereinafter *Moore's* ].  "A district court 'may . . . invoke [Rule 1–060(A) ] to resolve an ambiguity in its original order to more clearly reflect [its] contemporaneous intent and ensure that the court's purpose is fully implemented.' "  *Moore's, supra,* § 60.11[1][c], at 60–32 (quoting *Burton v. Johnson,* 975 F.2d 690, 694 (10th Cir.1992)).

{16}  Rule 1–060(A) relief is appropriate where the court "blunders in execution" of a judgment, not where the court changes its mind.  *See Moore's, supra,* § 60.11[3], at 60–38.  In this case, Harrell argues that the district court did not initially determine Maureen's heirs in its March 1994 order, but ascertained the heirs for the first time in November 1995 and appended that determination to the original probate order.  Such

an action is not consistent with the court "blunder[ing] in execution";  it is, however, consistent with the court "chang[ing] its mind."  *Id.* (emphasis omitted).  However, we will not now consider the propriety of that relief when Harrell did not appeal that specific order.

{17}  An order pursuant to a Rule 1–060(A) motion is appealable, subject to the time constraints of the Rules of Appellate Procedure.  *See* Rule 12–201(A) NMRA 1998 (stating that notice of appeal shall be filed within thirty days after the judgment or order appealed from is filed).  Significantly, if the time period for filing a notice of appeal on the underlying judgment has elapsed, a Rule 1–060(A) order does not establish a new time period for appealing the original judgment.  *See Century Bank,* 120 N.M. at 689 n. 1, 905 P.2d at 727 n. 1 ("[T]he only appealable order will be the order resolving the motion under Rule 1–060; the original judgment cannot be the subject of the appeal.").

■ {18}  Rule 1–060(A) relief does not affect the finality of judgment and, therefore, has no time limitation.  However, "Rule 60(a) is designed to strike a balance between rendering justice to the parties and ensuring that litigation ends within a finite period of time."  *Moore's, supra,* § 60.11[3], at 60–39. " 'To allow a party to correct alleged errors of law at any time by the mechanism of Rule 60(a) would significantly weaken the policy of finality [of judgments] as embodied in the Federal Rules.' "  *Id.* (quoting *Warner v. City of Bay St. Louis,* 526 F.2d 1211, 1212 (5th Cir.1976)), *aff'd on other grounds,* 552 F.2d 583 (1977).

■ {19}  Given the purpose of Rule 1–060(A), relief under the rule did not vacate the original probate order, notwithstanding the district court's instructions that the amended order not be entered nunc pro tunc.  Harrell argues that Maureen's heirs were not ascertained until the district court entered an amended order under Rule 1–060(A).  This, however, is not correct.  First, the court stated that omission of the heir was merely a clerical error.  Such a statement is consistent with the argument that the heirs were determined as part of the original proceeding but

an explicit statement of the determination was omitted. And second, ascertaining the heirs and appending that determination to the original order is not consistent with the correction of a clerical mistake. Regardless of the fact that the order amending the original probate order does not specify that the relief is granted pursuant to paragraph (A) of Rule 1–060, that is clearly the intent of the district court. The order is captioned "Order Granting Relief Pursuant To Rule 1–060 Of The Rules Of Civil Procedure Of The District Courts." Paragraph one states that the language declaring James to be Maureen's heir was an omission arising from "oversight or omission" and that "[the omission] was a clerical mistake[,]" thus incorporating language of Rule 1–060(A) into the court's order.

### Relief Under Section 45–3–412 Is Time–Barred

■ {20} The district court, in its Rule 1–060 order correcting the original probate order, stated that Harrell's "appropriate remedy ... will be to file a petition to vacate the amended [order] pursuant to § 45–3–412 of NMSA 1978 (1995 Repl.)." However, the district court was in error. As discussed above, the original probate order, entered March 25, 1994, implicitly determined that James was Maureen's heir. To be timely Harrell would have to have brought his omitted heir challenge by March 25, 1995. *See* § 45–3–412(A)(3)(c). He raised the matter in a petition filed August 8, 1995; he is, therefore, time barred from bringing an action under Section 45–3–412.

### New Mexico Public Policy Recognizes the Necessity of Finality

■ {21} As noted above, declaring James to be the heir of Maureen may have been the result of a misapplication of the 120–hour rule. *See* § 45–2–104. Because that issue is not before the Court it will not be addressed here. But it appears that in an attempt to correct that error, the district court amended its original probate order under Rule 1–060(A) with a view of providing Harrell a means of correcting the error.

{22} As discussed above, omitted heirs may petition for a reconsideration of heirs within a statutorily-limited time period. *See* § 45–3–412(A)(2)(3)(a), (c). It is consistent with the purpose of the Uniform Probate Code that an omitted heir's ability to challenge an heirship determination must be cut off at a certain point. *See* NMSA 1978, § 45–1–102(B)(3) (1975) (the underlying purpose of the Uniform Probate Code is to promote a speedy and efficient system for the settlement of the estate of a decedent)

{23} While a statutory limitation period may bar legitimate claims, " '[p]ublic policy requires that there be an end to litigation and that rights once established by a final judgment shall not again be litigated in any subsequent proceeding.' " *Miller v. Miller*, 83 N.M. 230, 234, 490 P.2d 672, 676 (1971) (quoting *Ealy v. McGahen*, 37 N.M. 246, 251, 21 P.2d 84, 87 (1933)). For example, an order decided by a formal proceeding usually has res judicata effects. *See Vieira v. Estate of Cantu*, 1997–NMCA–042, ¶ 7, 123 N.M. 342, 940 P.2d 190. Additionally, statutes of limitations bring finality to disputes. *See Smith v. O'Connell*, 997 F.Supp. 226, 236 (D.R.I.1998) (citing *Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807 (1879)). "[P]arties [may] conduct their affairs secure in the knowledge that the matter has been closed." *Id.* Also, statutes of limitations protect property rights. *See Mooney v. Harlin*, 622 S.W.2d 83, 84 (Tex.1981). Our Court has recognized these public policy concerns in the context of testacy orders. *See In re Estate of Kemnitz*, 95 N.M. 513, 515, 623 P.2d 1027, 1029 (Ct.App.1981) (holding that absent fraud, a formal testacy order is final and bars an heir's claim to recover improperly distributed property). Similarly, the United States Supreme Court held that "[a]fter an estate has been finally distributed, the interest in finality may provide [a] ... valid justification for barring the belated assertion of claims, even though they may be meritorious and even though mistakes of law or fact may have occurred during the probate process." *Reed v. Campbell*, 476 U.S. 852, 855–56, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986); *see also Shaw v. First Interstate Bank of Wis., N.A.*, 695 F.Supp. 995, 999 (W.D.Wis.1988) (holding that probate orders are given the finality

necessary to put an end to litigation, thereby allowing parties to adjust their affairs, knowing that their respective rights and liabilities have been finally settled). Consequently, public policy supports application of the statute of limitations here.

*CONCLUSION*

{24} For the reasons discussed, we hold that the time period to bring an omitted heir action elapsed twelve months after the entry of the original probate order on March 25, 1994; that Harrell's intestacy and heirship petition was untimely; and that the district court erred in denying Appellants' motion to dismiss the petition. Therefore, we reverse the court below and remand with instructions to enter an amended order granting Appellants' motion to dismiss and to vacate the district court's order dated October 11, 1996, declaring Harrell as Maureen's heir and appointing him as her personal representative.

{25} **IT IS SO ORDERED.**

APODACA and WECHSLER, JJ., concur.