This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**L.N. SAUL,**

     Petitioner,

**v.**                                **No. 31,338**
                                     **(consolidated with 31,461)**

**DIANE SAUL,**

     Respondent-Appellee,

**and**

**BARBARA SAUL,**

     Intervenor-Appellant.

**and**

**BARBARA SAUL, Successor in Interest to WELLS FARGO BANK, N.A.,**

     Plaintiff-Appellant,

**v.**                                **No. 31,739**

**LIGHTSEY N. SAUL, DIANE L. SAUL, JIM KELLER, and LANETTE KELLER,**

     Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Thomas A. Rutledge, J. Richard Brown, and Mark T. Sanchez, District Judges**

L.N. Saul
Carslbad, NM

Pro Se Petitioner

Max Houston Proctor
Hobbs, NM

for Appellee

Martin, Dugan & Martin
W.T. Martin
Carlsbad, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Judge.**

In this opinion we decide three appeals which concern various efforts by Barbara Saul to execute and foreclose on property awarded to Diane Saul in the divorce case between Diane and L.N. Saul, the son of Barbara Saul. The efforts are anchored in a stipulated judgment made by Barbara Saul and her son, L.N. Saul, in the divorce case after Barbara Saul intervened in the divorce case, contending that Diane and L.N Saul were indebted to her. We initially consolidated two appeals, and

subsequently consolidated the third appeal with the pending appeals. We therefore refer to the appeals as the first appeal, and the second appeal. For the reasons set forth herein, the orders and judgments entered by the district courts in these cases are all affirmed.

**FIRST APPEAL**

**Facts**

On April 5, 2007, L.N. Saul (L.N.) filed a petition in the district court seeking a dissolution of marriage from Diane Saul (Diane), alleging that during their marriage, they had acquired community property and obligated themselves to community debts, which should be equitably divided by the court. The case was assigned to Judge Thomas A. Rutledge.

On January 14, 2008, L.N.'s mother, Barbara Saul (Barbara), moved to intervene in the divorce action on grounds that she was a creditor of L.N. and Diane, and that as such, she was entitled to property they were seeking to divide in the divorce action. In the complaint in intervention, Barbara alleged that she was seeking repayment for loans she made for several years beginning in 1991 to L.N. and Diane, which were ultimately used to purchase a home and ranch in Loving, New Mexico. Barbara also sought an accounting and damages for conversion, fraud, and restitution

3

against both L.N. and Diane. Barbara's motion to intervene was granted in an order filed on February 21, 2008.

Judge Rutledge entered a partial decree dissolving the marriage between L.N. and Diane on June 27, 2008, and reserved jurisdiction over all other matters, "including the division of community property and debts."

Trial on Barbara's complaint in intervention and all remaining issues pending in the divorce action was held on July 1, 2009. At the commencement of the hearing, L.N.'s attorney tendered a stipulated judgment in which L.N. and Barbara stipulated that Barbara had a judgment against L.N. in the amount of $490,380, earning interest at the rate of 8.75% until fully paid. In the stipulated judgment L.N. and Barbara agreed that beginning in approximately 1998 and continuing through 2003, Barbara loaned L.N. and Diane a total of $490,380, which was ultimately used to purchase the Loving home and ranch. After noting that L.N. could not stipulate whether Diane owed Barbara any or all of that debt, Judge Rutledge approved the stipulated judgment between L.N. and Barbara over Diane's objection and reserved judgment on whether any or all of the stipulated judgment was a separate debt of L.N. or a community debt. At the conclusion of the evidentiary hearing, Judge Rutledge took all the pending issues under advisement.

Barbara filed the stipulated judgment in the district court that very day on July 1, 2009, as well as a transcript of judgment with the Eddy County Clerk, naming Diane as the judgment debtor. On July 8, 2009, Barbara recorded an amended and corrected transcript of judgment with the Eddy County Clerk, which correctly named L.N. as the judgment debtor. The only property which L.N. and Diane owned in Eddy County was the Loving home and ranch.

On July 15, 2009, Judge Rutledge issued a letter setting forth his decision. Addressing Barbara's complaint in intervention, Judge Rutledge determined that the debt claimed by Barbara was barred by the statute of limitations, and it was disallowed in its entirety. Also, in his letter, Judge Rutledge addressed the Wells Fargo suit. We discuss this suit at length below in the second appeal. It relates to a note payable to Wells Fargo Bank secured by a mortgage and security agreement all signed by L.N. and Diane regarding the cattle operation operated on the Loving property. Barbara purchased the loan from Wells Fargo in June 2008, for the amount due and then she liquidated the cattle securing the obligation. Judge Rutledge determined that after Barbara's repossession and sale of the cattle, L.N. and Diane owed her a community debt in the amount of $4,783.73, not including interest, costs, and possible attorney fees. The community assets were also divided.

The formal order dividing community property was filed on September 3, 2009. Pertinent to this appeal, Diane was awarded the Loving home and ranch as her sole and separate property. Further, the order declares that Barbara's claim against Diane is barred by the statute of limitations and that Barbara's claim against L.N. "is confirmed" as "Judgment has been entered against [L.N.] with the consent of [L.N.'s] attorney and [Barbara's] attorney." Finally, the order provides that in connection with the Wells Fargo suit, L.N. and Diane owed a community debt of $4,783.73, exclusive of interest, costs, and possible attorney fees. This debt, now owed to Barbara, was ordered equitably divided between L.N. and Diane.

On the basis of the stipulated judgment against L.N., Barbara filed a separate complaint to foreclose judgment lien on March 22, 2010, naming both Diane and L.N. as defendants. Barbara alleged that on July 1, 2009, she obtained a judgment against L.N. in the amount of $490,380, that she recorded a transcript of judgment against L.N., and that as of the date the transcript of judgment was filed, L.N. owned an undivided community interest in the Loving home and ranch. Accordingly, she alleged she was entitled to foreclose on the interest L.N. held in the Loving home and ranch as of the date the transcript of judgment was filed.

In response to Barbara's complaint to foreclose judgment lien, Diane filed a motion for relief from judgment or order pursuant to Rule 1-060(B)(6) NMRA in the divorce case before Judge Rutledge. The motion recites the history of the divorce case and alleges it was not Judge Rutledge's intention to have the judgment lien taken against L.N. by Barbara to attach to any property awarded to Diane. For relief, Diane asked that the court order that she be relieved from the stipulated judgment and that it not attach to any and all property awarded to her, or in the alternative, that the court amend the order dividing community property to specifically state that the stipulated judgment did not attach to any property awarded to Diane, including community property awarded to her as her sole and separate property.

A hearing was held on Diane's motion on February 8, 2011. At the hearing, Judge Rutledge said his intent in approving the stipulated judgment against L.N. in favor of Barbara was that the judgment only reach that property awarded to L.N. as his separate property in the divorce case. Judge Rutledge further noted that "because of the way pleadings were filed, the court's intent was not met." Judge Rutledge therefore asked, " Why shouldn't I be entering, at a minimum, a nunc pro tunc [order] making my division of community property and community debts effective prior to the filing of the judgment, stipulated judgment, confessed judgment?"

7

Following arguments, Judge Rutledge noted that when the divorce action was filed, a temporary domestic order was filed, which prohibited either party from incurring any debts or liabilities on the community property. The order was filed pursuant to Rule 1-121 NMRA, which directs that with certain exceptions, in all domestic actions, the court shall issue a temporary domestic order substantially in the form approved by the Supreme Court, and states in pertinent part:

> **Do not** incur unreasonable or unnecessary debts. Any debt which does not contribute to the benefit of both spouses or the minor children of the parties which is incurred after you have separated, may be the separate debt of the party who incurs the debt.

*See* Domestic Relations Form 4A-100(B) NMRA (approving mandatory forms to be used by attorneys in domestic relations cases); Domestic Relations Form 4A-112 NMRA (approved temporary domestic order form). Thus, Judge Rutledge concluded that because he ruled that the debt to Barbara was extinguished by the statute of limitations, if Barbara's arguments were legally correct that the stipulated judgment against L.N. reached Diane's property, then L.N. violated the temporary domestic order by stipulating to the judgment. Judge Rutledge succinctly explained:

> The court's position is very simple[.] If the debt is not legally enforceable against the community, neither member of the community can by their individual action without the acquiescence agreement, whatever of the other party, other spouse, create a debt, resurrect that

8

debt against the community, because that debt is dead as to that community.

On May 4, 2011, Judge Rutledge filed the order for relief from judgment and order nunc pro tunc, the amended order dividing community property nunc pro tunc, and the stipulated judgment nunc pro tunc (2011 Orders). Barbara appeals from these orders in No. 31,338.

Following entry of the 2011 Orders, Diane filed a motion to dismiss Barbara's judgment lien on the Loving house and ranch, and Judge Rutledge granted the motion over Barbara's objection. Barbara appeals from this order in No. 31,461. We consolidated these appeals into No. 31,338.

**Analysis**

In this appeal, Barbara mounts several challenges to the legal validity of the 2011 Orders. These arguments are grounded on the fact that she filed the stipulated judgment on July 1, 2009, before the formal order dividing community property was filed on September 3, 2009. She therefore argues: (1) that Judge Rutledge had no legal authority to limit her right as a creditor of L.N. to execute on his interest in the community property; (2) that Judge Rutledge had no legal authority to "usurp" her statutory right to execute on the residence, which was owned as community property because the stipulated judgment is a community debt, and even if the debt is deemed

9

L.N.'s separate debt, he had no authority to "usurp" her statutory right to execute on L.N.'s community interest in the residence; (3) that Judge Rutledge lacked legal authority to modify the judgment because Diane waived her statutory right to assert that the residence was not subject to the stipulated judgment; and (4) that Judge Rutledge in effect changed the stipulation made by Barbara and L.N. in the stipulated judgment, and he lacked legal authority to do so.

Thus, the first question we answer is whether Judge Rutledge committed reversible error in modifying the stipulated judgment pursuant to Rule 1-060(B)(6) NMRA. Rule 1-060(B) sets forth, in Subsections (B)(1)-(5), grounds on which a court may grant relief from a final judgment, order, or proceeding. Subsection (B)(6) then states that the district court may grant such relief for "any other reason justifying relief from the operation of the judgment." *Id.* Relief is available under Subsection (B)(6) only for reasons other than those enumerated in Subsections (B)(1)-(5). *Resolution Trust Corp. v. Ferri*, 120 N.M. 320, 324, 901 P.2d 738, 742 (1995). Further, since Subsection (B)(6) does not provide a set of criteria for granting relief, our common law precedent has concluded that it "provides a reservoir of equitable power to do justice in a given case, but it is limited to instances where there is a showing of exceptional circumstances." *Meiboom v. Watson*, 2000-NMSC-004, ¶ 31, 128 N.M.

10

536, 994 P.2d 1154 (internal quotation marks and citation omitted). "Exceptional circumstances means facts or things out of the ordinary bearing upon a central fact." *Mendoza v. Mendoza*, 103 N.M. 327, 332, 706 P.2d 869, 874 (Ct. App. 1985). In *Foundation Reserve Ins. Co. v. Martin*, 79 N.M. 737, 740, 449 P.2d 339, 342 (Ct. App. 1968), we quoted with approval the following language from 7 Moore, Federal Practice, ¶60.27[1], at 295 (2d ed. 1968):

> Like Rule 60(b) generally, Clause (6) should be liberally applied to situations not covered by the preceding five clauses so that, giving due regard to the sound interest underlying the finality of judgments, the district court, nevertheless, has power to grant relief from a judgment whenever, under all the surrounding circumstances, such action is appropriate in the furtherance of justice.

(Internal quotation marks omitted).

In answering whether Judge Rutledge committed reversible error in modifying the stipulated judgment under Rule 1-060(B)(6), our analysis is limited to determining whether the ruling constitutes an abuse of discretion. *Meiboom*, 2000-NMSC-004, ¶ 29. We do not substitute our judgment for the judgment exercised by Judge Rutledge, unless there has been a clear abuse of discretion, and before reversal is warranted, "it must be shown that the court's ruling exceeds the bounds of all reason or that the judicial action taken is arbitrary, fanciful, or unreasonable." *Id*. (alteration, internal

11

quotation marks, and citation omitted). With these standards in mind, we now turn to our analysis.

As we have already noted, when the stipulated judgment was presented for approval, the trial on Barbara's claim was pending, as well as a determination of the community assets and debts, and their equitable division. Judge Rutledge noted that L.N. could not stipulate to any debt Diane might owe to Barbara, and he reserved judgment on whether the stipulated judgment was a separate debt of L.N. or a community debt. These reservations notwithstanding, Barbara filed the judgment that same day, and she subsequently contended, and continues to assert on appeal, that by doing so, she deprived Judge Rutledge of his right to decide the very issues that were before him: what were the community assets and debts, and how should they be apportioned, which included determining whether Diane and L.N. owed Barbara a debt, and if so, whether it was a community debt or a separate debt.

Further, when Judge Rutledge heard Diane's Rule 1-060(B)(6) motion, he noted that because of the way the pleadings were filed, his intent was not met, and he asked whether he should not, at a minimum, enter an order nunc pro tunc making the division of the community property and debts effective prior to the filing of the stipulated judgment. After hearing arguments, Judge Rutledge filed the order for

12

relief from judgment and order, nunc pro tunc. Therein, he finds that Diane is entitled to relief from the stipulated judgment between L.N. and Barbara under Rule 1-060(B)(6) because of exceptional circumstances which exist because: (1) Barbara filed and transcribed the stipulated judgment against L.N. during the divorce proceedings, and she now claims she has a lien and judgment against the property awarded to Diane; (2) the court ruled that there was no community debt owed by Diane or L.N. to Barbara because the statute of limitations had expired on any claim she had against Diane and L.N.; (3) the court approved the stipulated judgment only for the specific purpose of allowing Barbara to execute on property awarded to L.N. in the order dividing community property; (4) the court had ordered that any judgment taken against L.N. by Barbara was to attach only to any property awarded to L.N. in the order dividing community property; and (5) Barbara subsequently filed a separate complaint to foreclose the stipulated judgment against property awarded to Diane in the order dividing community property, an action which was designed to circumvent that order. Because of these exceptional circumstances, Judge Rutledge concluded, the stipulated judgment between Barbara and L.N. should be amended, nunc pro tunc, setting forth that it is a personal judgment against L.N.; that only the property awarded to L.N. in the order dividing community property and separate property owned by him

13

was subject to the judgment lien; and that none of the property awarded to Diane in the order dividing community property was subject to the judgment lien.

The effect of the order modifying the stipulated judgment pursuant to Rule 1-060(B)(6) nunc pro tunc was to make the stipulated judgment operative *after* entry of the order dividing community property. The stipulated judgment was amended accordingly as was the order dividing community property. Specifically, the amended stipulated judgment directs:

> No judgment shall be awarded against [Diane] as a result of this Stipulated Judgment or Stipulated Judgment Nunc Pro Tunc, by and between [Barbara and L.N.], and no property whether separate or community awarded to [Diane] as set forth in the Order Dividing Community Property Nunc Pro Tunc shall be subject to this judgment.

Consistent with the foregoing, the amended order dividing community property orders:

> The Stipulated Judgment and Amended Stipulated Judgment Nunc Pro Tunc, taken by [Barbara] against [L.N.] shall attach only to the sole and separate property of [L.N.] or the property awarded to him in the Amended Order Dividing Community Property, Nunc Pro Tunc, only. The Stipulated Judgment against [L.N.] taken in favor of [Barbara] shall not attach to [Diane] personally or any property awarded to her in this original or Amended Order Dividing Community Property, Nunc Pro Tunc, or any separate property given to her as a gift or inherited by her, or owned by her prior to marriage.

14

We cannot conclude that Judge Rutledge abused his discretion in this matter. The stipulated judgment was approved under certain conditions. However, when Barbara filed and transcribed the stipulated judgment before Judge Rutledge ruled on the matters pending before him, she effectively changed the conditions under which the stipulated judgment was approved. This amounts to exceptional circumstances. Further, the sequence in which the pleadings were filed would result in an unintended foreclosure of the Loving home and ranch awarded to Diane as her sole and separate property. This is also an exceptional circumstance justifying use of Rule 1-060(B)(6). *See Hopkins v. Hopkins*, 109 N.M. 233, 241, 784 P.2d 420, 428 (Ct. App. 1989) (concluding that foreclosure of a family home resulting from a former husband's failure to pay second and third mortgages constituted exceptional circumstances to justify modifying a final divorce decree). Amending the orders to accurately reflect the conditions under which the stipulated judgment was approved cannot be considered an abuse of discretion.

Having resolved the principle issue raised in the first appeal, we summarily address Barbara's remaining arguments. Barbara asserts that Judge Rutledge's intent was irrelevant and that when he relied on his intent to enter the orders appealed from, he was required to recuse himself because he became a witness in the case. We reject

15

these assertions. A judge is entitled to amend a judgment to more clearly reflect the judge's intent and to ensure that his purpose is fully implemented. *See In re Estates of Hayes*, 1998-NMCA-136, ¶ 15, 125 N.M. 820, 965 P.2d 939 (discussing Rule 1-060(A)). A judge may even initiate relief from a judgment under Rule 1-060 on his own motion. *Desjardin v. Albuquerque Nat'l Bank*, 93 N.M. 89, 91, 596 P.2d 858, 860 (1979). Finally, there is no indication in the record that any party wanted Judge Rutledge to testify about a disputed evidentiary fact.

Barbara's final argument in this first appeal is that because she filed her notice of appeal on May 24, 2011, Judge Rutledge had no jurisdiction to enter the order releasing the judgment lien on July 1, 2011. We reject this assertion as well. *See Kelly Inn No. 102 v. Kapnison*, 113 N.M. 231, 241, 824 P.2d 1033, 1043 (1992) ("It is clear, though, that a pending appeal does not divest the trial court of jurisdiction to take further action when the action will not affect the judgment on appeal and when, instead, the further action enables the trial court to carry out or enforce the judgment." (emphasis omitted)).

**SECOND APPEAL**

**Facts**

16

While the divorce action was still pending, a separate action was filed by Wells Fargo Bank N.A. against L.N. and Diane on June 12, 2008, alleging that a promissory note secured by a mortgage on their Loving house and ranch and an agricultural security agreement in all of their livestock was in default. Herein, we refer to this as the Wells Fargo suit. Wells Fargo sought the amount owed under the note, interest, attorney fees, and to foreclose the mortgage and exercise its rights as a secured creditor in the livestock. Judge J. Richard Brown was assigned to preside over the Wells Fargo suit.

Effective on July 25, 2008, Barbara purchased the promissory note, mortgage, and security agreement from Wells Fargo Bank, and Wells Fargo Bank assigned the note, mortgage, and security agreement to Barbara. The purchase price was the total amount owed under the promissory note as of that date in the amount of $400,202.36. Barbara was substituted as Plaintiff in the Wells Fargo suit, and as the secured creditor of L.N. and Diane, Barbara repossessed their cattle and sold them at auction on August 13, 2008, for the total sum of $397,718.44. This left a balance owed on the promissory note in the amount of $4,763.73, with interest accruing at the rate of 11.75% per annum from August 13, 2008.

On July 15, 2009, the same day that Judge Rutledge issued his letter decision in the divorce case declaring that Barbara's complaint in intervention was barred by the statute of limitations and that the Loving house and ranch were awarded to Diane as her sole and separate property, Barbara filed a motion in the Wells Fargo suit to amend the complaint. She alleged that as purchaser and assignee of the note, mortgage, and security agreement, she "stands in the shoes" of Wells Fargo as Lender under the loan documents. Accordingly, she asserted, the mortgage and agricultural security agreement secured payment of the $490,380 stipulated judgment made by her and L.N. in the divorce case, which she filed on July 1, 2009. This was based on a "dragnet" clause in the mortgage and an identical clause in the agricultural security agreement signed by both Diane and L.N. which states:

> In addition to the Note, this Mortgage secures all obligations, debts, and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

18

Barbara contended Diane and L.N. were therefore jointly and severally obligated to her for the balance on the original Wells Fargo Note in the amount of $4,763.73, plus interest at the rate of 11.75% per annum from August 13, 2008, plus the amount of the stipulated judgment against L.N. in the amount of $490,380, plus interest at the rate of 8.75% from July 1, 2009.  Barbara further contended that she had a judgment lien against the Loving house and ranch by virtue of the stipulated judgment and transcript of judgment she had filed.  Over Diane's objection, Barbara's motion to amend the complaint was granted.

In her answer, Diane asserted that at the time the Wells Fargo complaint was filed, the only debt owed was to Wells Fargo in the principal amount of $367,613.84, plus accrued interest in the amount of $20,565.95 as of May 28, 2008, at the rate of 11.75% per annum, plus costs and attorney fees; that the stipulated judgment was entered into by Barbara and L.N. for the purpose of circumventing Judge Rutledge's ruling in the divorce action; that no debt was owed to Barbara by L.N. and Diane

because her complaint was barred by the statute of limitations; that Barbara was attempting to "bootstrap" the stipulated judgment amount onto the Wells Fargo debt after the fact; and that Barbara's claim was barred under the doctrines of waiver, estoppel, unclean hands, the statute of limitations, and res judicata or collateral estoppel.

On May 12, 2010, Diane filed a motion for summary judgment, in the Wells Fargo suit. The motion was supported by her affidavit stating that: (1) at the time Wells Fargo filed the suit, the principal amount owed was $367,613.84, plus accrued interest in the amount of $20,565.95 as of May 28, 2008, at the rate of 11.75% per annum, plus costs and attorney fees; (2) on July 25, 2008, Barbara was assigned any and all of the rights of Wells Fargo, and she foreclosed and sold the collateral; (3) in a letter dated July 15, 2009, Barbara made a demand in the amount of $4,763.73 as the full and final amount owed on the original note, plus accrued interest; (4) on July 29, 2009, Diane paid Barbara's attorney a check (dated July 28, 2009) in the amount of $5,000 in full and final settlement of the foreclosure, which was still being held and not negotiated; (5) at the time of the foreclosure and sale of the collateral, there was no other indebtedness owed to Wells Fargo, nor did Wells Fargo have any other

judgment against Diane and L.N.; (6) the July 1, 2009 stipulated judgment of $490,380 was taken against L.N. as his sole and separate debt, and Diane was held harmless for the stipulated judgment debt; (7) there was no nexus or connection between the Wells Fargo debt and the stipulated judgment; and (8) the stipulated judgment was made for the purpose of circumventing the judgment entered by Judge Rutledge in the divorce case.

Barbara responded and filed a cross motion for summary judgment. Pertinent to our decision herein, Barbara admitted to receiving Diane's check dated July 28, 2009, in the amount of $5,000; asserted that the amount of interest earned on the Wells Fargo note was $536.74; and that the check was therefore insufficient by $300.47. Diane paid Barbara the additional sum of $400 on December 6, 2010, thus satisfying the deficiency. (She therefore actually overpaid $55.22).

On November 22, 2010, Judge Brown issued a letter decision granting Diane's motion for summary judgment and denying Barbara's motion for summary judgment. Judge Brown reasoned that on the basis of *Ruidoso State Bank v. Castle*, 105 N.M. 158, 730 P.2d 461 (1986), the dragnet clause in the Wells Fargo loan documents did not capture the stipulated judgment between Barbara and L.N. Barbara filed a motion to reconsider to which Diane responded. Judge Brown filed an order granting Diane's

21

motion for summary judgment on March 1, 2011, and recused himself from deciding Barbara's motion to reconsider. The Wells Fargo case was thereupon reassigned to Judge Rutledge and, at Barbara's request, Judge Rutledge recused himself. The case was finally assigned to Judge Mark T. Sanchez.

Ultimately Judge Sanchez entered a final judgment. Pertinent to this appeal, the final judgment denied Barbara's motion for reconsideration; determined that Diane had overpaid Barbara $55.22, which she was entitled to recover; made no award of attorney fees; and to the extent any motions or claims for relief remained outstanding, they were denied except as set forth to the contrary in the judgment. Barbara appeals from this final judgment as well.

**Analysis**

The primary issue we address in the second appeal is whether Judge Brown properly granted Diane's motion for summary judgment and denied Barbara's motion for summary judgment. The material facts surrounding this issue are undisputed, and our review is de novo. *See Harris v. Vasquez*, 2012-NMCA-110, ¶ 9, 288 P.3d 924.

Judge Brown reasoned that on the basis of *Ruidoso State Bank*, the dragnet clause in the Wells Fargo loan documents do not capture the stipulated judgment between Barbara and L.N. We therefore first explore its holding.

*Ruidoso State Bank* considered how to interpret a dragnet clause which is substantially similar to the one before us in this case. 105 N.M. at 159-60; 730 P.2d at 462-63. Our Supreme Court first said, "dragnet clauses do not, as a matter of law, secure all debts between parties[.]" *Id.* at 160, 730 P.2d at 463. Further, "[a]side from the actual language of the provision, construction should focus on the intent of the parties as evidenced by the circumstances surrounding the mortgage and the nexus between the mortgage and the notes involved." *Id.* Thus, *Ruidoso State Bank*, requires us to determine whether the parties to the loan documents (Wells Fargo on the one hand, and L.N. and Diane, on the other) intended the Wells Fargo loan documents to capture this future debt—the stipulated judgment between L.N. and Barbara. To do so, we examine the circumstances surrounding the mortgage and the nexus between the mortgage and the stipulated judgment. Finally, *Ruidoso State Bank*, instructs us how to construe the dragnet clause: "Dragnet clauses which purport to secure all debts, past, present, and future, between parties to a security agreement generally are disfavored and thus strictly construed." *Id.* at 160, 730 P.2d at 463. We therefore reject Barbara's assertion that *Clovis National Bank v. Harmon*, 102 N.M. 166, 692

P.2d 1315 (1984), only requires that we look to the language of the dragnet clause.[1] As *Ruidoso State Bank* notes, the issue in *Clovis National Bank* was whether substantial evidence supported the decision of the district court in *that* case that dragnet clauses in mortgages signed before and after the note at issue captured that note. *See Ruidoso State Bank*, 105 N.M. at 160, 730 P.2d at 463. The issue before us in *this* case is whether, given the undisputed facts, summary judgment was properly granted to Diane and not to Barbara. To answer this question we now turn to the analysis mandated by *Ruidoso State Bank*.

The Wells Fargo loan documents containing the dragnet clause were signed on December 1, 2006. The promissory note was in the amount of $450,000, which was secured by a mortgage and agricultural security agreement. The agricultural security agreement secured payment of the promissory note ($450,000), and the mortgage which contains the dragnet clause at issue created a lien not to exceed $900,000. Other than the loan documents themselves, the record does not set forth the circumstances surrounding the note, mortgage, and security interest or their purpose.

---

[1]We also decline Barbara's invitation to follow *In re Lewis*, 212 B.R. 827 (Bankr. E.D. Va. 1997) and *Vidalia Production Credit Ass'n. v. Durrence*, 94 S.E.2d 609 (Ga. Ct. App. 1956), as these cases construe dragnet clauses contrary to *Ruidoso State Bank*.

24

We also have before us the following undisputed facts: (1) on June 27, 2008, L.N. and Diane were divorced; (2) effective on July 25, 2008, Barbara purchased the note, mortgage, and security agreement from Wells Fargo Bank, and Barbara was substituted as the plaintiff in the Wells Fargo suit; (3) as the secured creditor of L.N. and Diane, Barbara repossessed their cattle and sold them at auction on August 13, 2008, leaving a balance owed on the promissory note in the amount of $4,763.73, with interest accruing at the rate of 11.75% per annum from August 13, 2008; (4) Barbara intervened in the divorce case between L.N. and Diane, asserting they owed her a community debt; (5) following a trial on the merits on Barbara's complaint in intervention, Judge Rutledge determined in a letter dated July 15, 2009, which was formalized in the order dividing community property filed on September 3, 2009, that the debt claimed by Barbara was barred by the statute of limitations and it was disallowed in its entirety; (6) nevertheless, L.N. and Barbara stipulated that L.N. owed Barbara $490,380, and they stipulated that Barbara have judgment against L.N. in this amount, earning interest at the rate of 8.75% until fully paid. The stipulated judgment was approved subject to conditions by Judge Rutledge on July 1, 2009; (7) on July 15, 2009, Barbara made a demand in the amount of $4,763.73 as the full and final amount

25

owed on the original note, plus accrued interest; and (8) there was no nexus or connection between the Wells Fargo debt and the stipulated judgment.

On the basis of the foregoing undisputed facts, we agree with Judge Brown that properly interpreted under the mandate of *Ruidoso State Bank*, the parties to the loan documents did not intend the dragnet clause in the Wells Fargo loan documents to capture a future debt such as the stipulated judgment between L.N. and Barbara. Barbara was not a party to the original loan documents and there is simply no nexus or connection between the debts evidenced by the Wells Fargo loan documents and the stipulated judgment between Barbara and L.N. There is nothing in this record indicating that the parties to the loan documents could have even foreseen the scenario which is now before us, let alone that they would anticipate capturing a stipulated judgment obtained in these circumstances. We therefore affirm Judge Brown's order that granted Diane's motion for summary judgment and denied Barbara's motion for summary judgment as well as Judge Sanchez's final order denying Barbara's motion for reconsideration.

Having resolved the major issue raised in this appeal, we return to the remaining questions. First, Barbara asserts that Judge Sanchez erred in refusing to award her attorney fees incurred in collecting under the mortgage and collecting the

26

deficiency under the note. We agree with Barbara that this decision is reviewed for an abuse of discretion. *See Dean v. Brizuela*, 2010-NMCA-076, ¶ 11, 148 N.M. 548, 238 P.3d 917. In this regard, the district court made findings that while Barbara may have been entitled attorney fees from August 29, 2008 to December 6, 2010, "[t]he court does not wish to speculate about the amount of attorney fees to which [Barbara] is entitled, and the proof seems to be fraught with difficulty." Moreover, Barbara's counsel confirmed that the legal expenses and fees incurred by Barbara "cannot properly be segregated by cause number, or even category because all of the fees are inextricably intertwined." The burden was on Barbara to segregate the fees charged to which she was entitled or to demonstrate that work performed on claims that she was not entitled to receive attorney fees for was "inextricably intertwined" with the work that she was entitled to be compensated for. *Id.* ¶ 14. We also note that Judge Sanchez also ruled:

> The Holder [Barbara] and the Maker [Diane] may by November 8, 2011, submit revised affidavits in support of awards of attorney fees; affidavits and argument in opposition to awards of attorney fees shall be due by November 15, 2011. The parties should however bear in mind the rulings made by the court.

However, Barbara did not take advantage of this additional opportunity to segregate the recoverable fees. The record supports the findings of Judge Sanchez, and we

perceive no abuse of discretion on his part in refusing to award Barbara's attorney fees.

Finally, Barbara asserts that she was entitled to a judgment against Diane in the amount of $5,300.47, plus interest and that Judge Sanchez committed reversible error in awarding Diane judgment against Barbara in the amount of $55.22. Barbara asserts that when Diane tendered her check in the amount of $5,000 it was not "unqualified," and since more than $5,000 was owed at that time, she properly refused the tender. Furthermore, she asserts, the subsequent $400 check, purportedly representing the balance paid in full, was returned to Diane's counsel. Barbara asserts that since the undisputed evidence proved that as of July 28, 2009, the amount owed under the note was $5,300.47, the purported tenders were properly refused, resulting in the balance not being paid, she is entitled to judgment under the note in the amount of $5,300.47, plus interest. Largely for the same reasons, Barbara argues that it was improper for Judge Sanchez to conclude that Barbara overpaid the amount owed under the note in the amount of $55.22 and erred in granting Diane a judgment for this amount.

We reject these arguments. On July 15, 2009, Barbara demanded payment in the amount of $4,763, plus interest as the full amount owed, and Diane tendered a check on July 28, 2009, in the amount of $5,000. Barbara now says she rejected the

28

tender because it was insufficient by $300.47. However, she never told Diane that the payment was rejected for this reason. Furthermore, Barbara moved to amend the Wells Fargo suit on July 15, 2009, asserting that as the assignee of the Wells Fargo loan documents, she was entitled to foreclose on the stipulated judgment with L.N. in the amount of $490,380. Thus, a tender of $5,300.47 by Diane was not necessary, as such a tender would have been futile under the circumstances. *See Carmichael v. Rice*, 49 N.M. 114, 118-119, 158 P.2d 290, 293 (1945) (stating that where it is clear that a tender need not be made where it is clear that if it is offered, it will be rejected).

Judge Sanchez found that as of July 27, 2009, the balance owed on the note (including interest) was $5,297.40 and that after the payment of $5,000 on July 28, 2009, Barbara was owed $297.47, plus interest, for a total of $344.78. Further, after the $400 payment on December 6, 2010, Judge Sanchez concluded that Diane overpaid the amount due by $55.22. These factual findings are supported by substantial evidence, and they are not disputed. Judge Sanchez also ordered, "[t]o the extent that any checks issued by or on behalf of [Diane] have become stale or otherwise incapable of negotiation, [Diane] may issue checks anew or make payment in any lawful manner on [Barbara's] return of stale or non-negotiable checks to [Diane] or her attorney." We therefore affirm this order as well.

29

**CONCLUSION**

For the reasons expressed herein, all of the orders, judgments, and decrees entered by the district court in the respective cases on appeal are affirmed.

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**


_____
**CELIA FOY CASTILLO, Chief Judge**


_____
**JAMES J. WECHSLER, Judge**